## No. 11,486.

### HEIRS OF JOHN FORD VS. MILLS AND PHILLIPS.

1. A succession sale made under an order granted by the clerk of court upon application of a person acting as administrator can not be dealt with as an absolute nullity upon the ground that the particular person had not the qualifications necessary for appointment, nor because, though letters of administration signed by the deputy clerk were in the record, there was no direct evidence of an appointment by the clerk. The action of the latter granting the order of sale was a recognition by him of such an appointment and that the party had legally qualified under it.

2. Where the deed under which a party claims title to real estate as vendee at a succession sale does not recite that it was made under order of court and is otherwise silent as to the observance of the formalities essential to the legality of such a sale, and where the evidence shows that the auctioneer in selling departed from the terms of the order authorizing a sale, such title can ot serve as the basis for the commencement of the prescription of ten years

3. Where the title tendered to a purchaser makes no reference to that under which the vendor holds, bad faith can not be presumed in the purchaser from the fact that the vendor's title was of record and fatally defective.

. Declarations of former owners of property in derogation of their own title and good faith made after they had ceased to be owners are not admissible against the subsequent vendees of the same.

| 46 | 331 |
|----|-----|
| 46 | 1479 |

| 46 | 331 |
|----|-----|
| 47 | 431 |
| 47 | 930 |

| 46 | 331 |
|----|-----|
| 49 | 194 |
| 49 | 239 |

| 46 | 331 |
|----|-----|
| 110 | 820 |

| 46 | 331 |
|----|-----|
| 118 | 757 |
| 120 | 31 |
| f120 | 33 |

| 46 | 331 |
|----|-----|
| e122 | 898 |

5.   Plaintiff in bringing a petitory action is not forced to cumulate therewith a direct action of nullity with proper parties to set aside judicial proceedings under which his title has apparently been divested, if he alleges that such proceedings are absolute nullities. He has the right, at his risk, to tender and go to trial on that issue.

APPEAL from the Eighth District Court, Parish of Catahoula. *Dagg, J.*

---

· *Frank B. Thomas* and *Allen B. Hundley* Attorneys for Plaintiffs and Appellants:

A person in no manner related, not an heir and not even a creditor, is not entitled to the administration of an estate.  C. C., Arts. 1046, 1049.

A curator or administrator must take an oath before the judge (or before some officer legally authorized to administer oaths), who has appointed him, before he enters on the performance of his duties.  C. C., Art. 1126.

It is only after the lapse of ten days, and notices given, and after the inventory is closed, that the appointment can be made.  C. C., Art. 1114, 1115; C. P., Art. 966, 967, 970.

Clerks of court can not appoint administrators until after the legal notices are given, nor can he grant orders for sale of succession property, unless application be accompanied with statement of debts.  R. S., Secs. 308, 310, p. 78.

The conditional order appointing administrator must be followed by a second order appointing and confirming, and an order that letters of administration issue, after the expiration of the publication of the notices required by law. 39 An. 298, Sec. 3; 35 An. 405; 40 An. 233.

Curators or administrators must wait thirty days after their appointment before they can demand the sale of the immovable property.  C. C., Arts. 1164, 1165, 1166, 1167, 1168.

It should be presumed that no sale is necessary or that sufficient money is on hand to pay debts; if not, creditors can apply to the court to sell property.  C. P., 990, 991, 992.

An administrator can not pay debts without an order of court.  C. C., Arts. 1179, 1180, 1181, 1184, 1185, 1186.

To be *prima facie* evidence of a valid title, a deed to property sold at a judicial sale must state and set forth on its face every essential fact to show that they complied with the law; otherwise it is radically defective in form and substance. 8 Martin, 6 and 9; 30 An. 1275.

The sale of a thing belonging to others is absolutely null, and the prescription of ten years will not prevail.  C. C., Art. 2452; 29 An. 560; 4 R. 26, 201; 14 An. 598.

A deed not valid in form can not form a foundation for the prescription of ten years.  C. C., Art. 3486; 38 An. 885.

A deed which, on its face, shows radical defect is such a notice to a purchaser as would make him a possessor in bad faith.  C. C., Art. 3452.

Prescription does not run against minors.  C. C., Art 3522.

*Potts & Hudson* Attorneys for Phillips, and *J. F. Ellis* and *D. N. Thompson* Attorneys for Mills, Defendants and Appellees:

The order of court appointing an administrator is a judgment, which can not be attacked collaterally, and can only be annulled in a direct action brought against the administrator for that purpose. 28 An. 806; 10 An. 496; 2 La. 249; 2 An. 538; 8 An. 85; 19 An. 69.

The acts of a *de facto* administrator, acting under letters issued by a competent court, are valid and legal, although the order or judgment appointing him may be illegal, so long as the judgment making the appointment remains in force. Administrators are officers of the court, and their acts, like those of other public officers, done in pursuance of their duties as such, are valid and binding until deprived of their office in a direct action. 2 La. 249, and others.

An action not brought against the administrator directly, and to which the administrator is not a party, is not a direct action, and in such a collateral proceeding the judgment appointing the administrator can not be attacked nor annulled. 8 An. 85; 10 An. 496; 28 An. 806.

In judicial proceedings courts and officers are presumed to have done their duty. The administrator making the sale under orders of the court is presumed to have complied with all the formalities of the law in making the sale, and the burden is upon those alleging to establish the want of these formalities by legal evidence.

The adjudication completes the sale made at public auction. The deed afterward prepared and executed is but the evidence of the sale. The deed may be informal or defective, while the sale and adjudication is legal and valid. C P., Art. 695; 29 An. 207; 31 An. 276; 36 An. 776.

Purchasers at public sales, under orders of courts having jurisdiction, are not compelled to look beyond the order or judgment of the court ordering the sale. 31 An. 276; 39 An. 67; 14 An. 632; 19 An. 353; 20 An. 124; 15 An. 250; 2 An. 468; 18 An. 485; 21 An. 505.

An error in the manner of signing the deed does not invalidate the sale, the only question being whether the deed came from one having the power to represent the succession and make the sale. 28 An. 806.

The prescription of five years cures all informalities in public sales, such as want of advertisement, want of appraisement, offering at wrong time or place, failure to announce terms and conditions of sale, etc. 21 An. 506; 10 Rob. 396; R. C. C. 3543; 29 An. 534; 33 An. 1176; 39 An. 60; 28 An. 571; 34 An. 209; 32 An. 437, etc.

He who acquires an immovable in good faith and by a just title prescribes for it in ten years. R. C. C. 3478.

Good faith is always presumed in matters of prescription, and he who alleges bad faith in the possessor must prove it. R. C, C. 3481.

This court will notice *ex proprio motu* the want of proper parties and will not render judgment in a cause affecting parties not before the court. Liquor and Tobacco Company *et als.* vs. Jeffries *et als.*, 45 An. 632.

---

The opinion of the court was delivered by

NICHOLLS, C. J.   John Ford died in 1863, leaving eight minor children, some personal property and the small tract of land in the parish of Catahoula which forms the subject of this litigation.   In

.1865 one Dean applied to be appointed administrator, alleging that an administration was necessary in order to liquidate and settle the succession and pay debts. On the 12th De, ember, 1865, the district clerk signed an order directing the advertisement of the application according to law, and "decreeing that if after the expiration of said period no opposition be made in the meantime, he be appointed administrator on his giving bond and security for the sum and conditioned according to law and on his complying with the law in all other respects." On the 2d January, 1866, the *deputy clerk* issued letters of administration to Dean, in which after a recital that Dean "had been appointed administrator of the succession of John Ford and taken the oath and executed bond as prescribed by law," it is declared: "therefore, be it known that the said A. B. C. Dean is hereby confirmed in said appointment."

On the 11th January, 1866, the district clerk, upon an application of Dean, as administrator, praying for a sale of all the property of the succession to settle and liquidate the same, rendered an order of sale of all the property "at public auction on the terms and conditions required by law."

On the 26th December the following instrument, upon which the title of the defendants is based, was executed by Dean and placed of record:

STATE OF LOUISIANA, ⎰
   Parish of Catahoula. ⎰

Know all men by these presents, that I, A. B. C. Dean, administrator for the heirs of John Ford, did offer for sale on the first day of December, 1866, according to law, the tract of land below described to highest and last bidder, whose name will also appear below. Therefore, the aforesaid Mr. Dean, a resident of Catahoula parish, Louisiana, does bargain, sell, convey and deliver unto Solomon Jemison, a resident of the aforesaid parish and State, and Ransom B. Jemison an equal portion of said land, the said Ransom B. Jemison being a resident of Caldwell parish, the following tract or parcel of land, with all the improvements and appurtenances thereunto belonging, on what is known as Sandy Creek, Catahoula parish, Louisiana, to-wit: (Here follows a description of the property.)

"The consideration of the above named land given by the Jemi-

son brothers is seven hundred and forty-five dollars, for which they have executed their joint notes for, made payable to A. B. C. Dean or order, due on the first day of December, 1867, with Josiah Jemison and C. P. Kees as security to said notes. Now it is the true intent and meaning of both of the above contracting parties that the above described land is to remain specially mortgaged and hypothecated, and the same is hereby mortgaged and hypothecated for the payment of the above described notes.

"In testimony whereof we have this day signed our names and affixed our seals thereunto in the presence of W. H. Holloman and Levi Prestridge, witnesses of lawful age and domicile. Signed, sealed and delivered on this the 22d December A. D. 1866.

| | | |
|---|---|---|
| (Signed) | " A. B. C. DEAN. | (SEAL.) |
| (Signed) | " SOLOMON JEMISON. | (SEAL.) |
| (Signed) | " RANSOM B. JEMISON. | (SEAL.) |

Witnesses:

(Signed) · " W. H. HOLLOMAN.

(Signed) " LEVI PRESTRIDGE."

On the *22d November, 1869, Solomon* and *Ransom Jemison* sold the property to *R. L. Elliot.*

*R. L. Elliot* sold to W. H. ELLIOT on the *26th December, 1886.*

W. H. ELLIOT sold to *William McBroom on the 18th day of October, 1888.*

*William McBroom* sold to F. M. MILLS (one of the defendants) *on the 27th day of May, 1890.*

*F. M. Mills* transferred a portion of this property to C. G. WOODBRIDGE, *on the 9th day of February, 1891,*

C. G. Woodbridge sold his interest on the 29th day of June, 1891, to GUY PHILLIPS.

*F. M. Mills* and *Guy Phillips* are at present in possession of the property under their respective titles, and claim to be owners thereof.

On the *25th July, 1892,* the plaintiffs, as heirs of *John Ford,* instituted the present petitory action against *Mills and Phillips,* praying to be declared the owners and placed in possession of the tract of land referred to, and for rent of the same, at the rate of $200 *per annum,* from the 27th May, 1890.

Plaintiffs attack all the proceedings in the matter of the succession of Ford, and declare them to be absolute nullities.

They allege that Dean was neither a creditor of the succession of Ford nor a relative or connection of the family; that he had no right to be appointed administrator; that the original order touching the appointment, signed by the district clerk, was null and void, as it was a conditional order of appointment, and the subsequent order signed by the deputy clerk was also an absolute nullity, as he was without power or authority to appoint or confirm an administrator. They allege that the order of sale was granted within three months of the appointment of the administrator in violation of Art. 1164 Revised Civil Code, that there was no necessity for the sale of immovable property; that no creditor applied for a sale, and Dean never filed a statement of debts. That the pretended sale to the Jemisons was absolutely null as a judicial sale; that it was nothing more than a private sale by Dean to said parties; that in making the same, Dean did not pretend to make it as administrator of the estate of John Ford or auctioneer, but as administrator of the heirs of John Ford, which he never was; that it was also absolutely null as a judicial sale, for the reason that none of the forms of law for such a sale were complied with; that it was not advertised for sale in three public places in the parish of Catahoula; that the deed of sale does not recite that it was made in pursuance of or in obedience to any order of court; that it had been advertised to take place at the court house door or at the late residence of the deceased for thirty days preceding the sale, or for any number of days, in three public places in the parish, designating said places; that he had offered the same for sale to the by-standers in an audible voice, or that he proclaimed the terms of sale, whether for cash or on a credit of twelve months, nor that he adjudicated said lands and improvements to the said Jemisons as the last and highest bidders as administrator and auctioneer of the estate of John Ford, deceased; nor did Dean sign the deed to the Jemisons as such, but signed the same in his individual name, thereby making it a private sale and absolutely null and void; that in point of form and legal requirements it could not form the basis of the commencement of prescription; that the deed does not show whether it was the first or second attempt at sale; that if for the first attempt it was null and void, as it was sold for less than the appraisement. That the Jemisons and all the other parties holding under them were purchasers and transferees and possessors in bad faith; that they had actual and constructive

knowledge and notice of all the illegalities and informalities connected with the sale; that the deed of sale to the Jemisons conveyed no legal title to them, and they could not legally convey title to another.

Defendants filed exceptions, only one of which has been referred to in this court.

That exception, which was to the effect that the necessary parties had not been made and that the persons holding and claiming the property as owners under the Dean deed and since should have all been made parties, was overruled and defendants answered.

They pleaded the general issue, averred their good faith, maintained the legality and validity of the proceedings in the matter of the succession of Ford and of the various titles thereunder. They averred that the purchase price of the sale to the Jemisons was received by Dean, administrator, and applied by him to the payment of valid existing debts of the succession, and finally pleaded the prescription of five and ten years.

The plaintiffs having alleged the absolute nullity of the proceedings in the matter of the succession of Ford and gone to trial on that issue, we do not think it was necessary for them to have made other parties than those before us. See Belard & Johnson vs. Gebelin & Duggan, decided this day, also, Succession of Bright, 38 An. 141.

The District Court held the sale from Dean to the Jemisons to be so radically null as not to serve as the basis for the commencement of prescription. It was of the opinion, however, that there was no evidence before it impugning the good faith of R. L. Elliott and those holding the property after him, and therefore took as the initial point of prescription the date of R. L. Elliott's purchase. With that date as the starting point, the court held that the prescription of ten years had accrued even as against the minors. It therefore sustained the plea of the prescription of ten years and rejected plaintiffs' demand. They appealed.

We are of the opinion that plaintiffs' objections in so far as they seek to base the nullity of the transfer of the property to the Jemisons upon the ground that Dean was not the administrator of the succession for the reason that he was neither a creditor nor a relative or connection of the Ford family, and that there is not in the record any evidence of a direct order of the district clerk himself

appointing him as such, but simply a paper from which it would appear that Dean's appointment rested upon the unauthorized act of a deputy clerk, can not be inquired into in the collateral manner attempted. The order of sale was granted by the district clerk upon a petition addressed to the court by Dean as administrator and he was at least a *de facto* officer. We presume, besides, that there must have been some intermediate order between the original one of the district clerk and the later one of his deputy. We think the paper signed by the latter was intended to be merely the "Letters of Administration" which issue to an administrator after he has complied with the law. We agree with the district judge, that the claim of ownership to the property in litigation based upon the prescription of ten years, as founded upon the alleged sale to the Jemisons, is untenable. The deed of sale upon which this claim rests is radically defective in its recitals and form, and *dehors* the deed, we are satisfied that Dean—if he were acting in the matter of the sale under the order of the court—departed from the terms of the order. He was ordered to sell according to law, and the evidence shows that there was no attempt whatever to sell the property for cash, but that it was transferred at once to the Jemisons upon their furnishing their notes payable at twelve months. The case falls under the operations of the principles announced in the case of Ambrose vs. Marsh, 27 An. 241; see also Succession of Fritz, 12 An. 368.

We next come to defendant's claim of prescription, based upon the transfer of the property by the Jemisons to R. L. Elliott, and upon the subsequent changes of ownership. If R. L. Elliott's title and possession was of such a character as to serve as the commencement of the prescription of ten years, the conclusions reached by the district judge on this branch of the case were correct, except as to Elijah Ford.

We have therefore to inquire into the question of the prescription of ten years, based upon the transfer of the property from the Jemisons to R. L. Elliott and upon the subsequent changes in ownership.

Plaintiffs contend that had the court permitted J. J. McKeithen, Thomas Davis, Col. M. C. Davis and Wade Hough to testify upon the points which they sought to interrogate them upon and had not excluded their testimony as it did (but under reservation of their bills of exception), they would have established the bad faith of the two

Heirs of Ford vs. Mills and Phillips.

Elliotts and McBroom. They contend that the excluded testimony was admissible. We think the judge's ruling correct. Plaintiffs sought to prove, as against the defendants, declarations of former owners made to those witnesses derogatory to their own titles— those declarations having been made subsequent to their having themselves alienated the property. Declarations made under such circumstances can not be permitted to affect subsequent vendees. We were inclined to doubt the propriety of the ruling as to Hough's testimony, as it does not very clearly appear from the record what the date of the statements to Hough was, but it was plaintiffs' duty to have made the recitals show the date with certainty, so as to affirmatively establish error on the part of the judge. We have to assume his rulings to be correct until the contrary is made manifest. There was no reference in the title tendered to R. L. Elliott to that under which the Jemisons acquired. Bad faith can not be presumed from the fact that the Jemison title was of record. Fletcher vs. Cavelier, 4 La. 274; Ribas vs. Bennett, 5 La. 242; Heirs of Self vs. Taylor, 33 An. 769; Pattison vs. Maloney, 38 An. 885.

Plaintiffs claim that under any circumstances minority has saved the rights of the children of William Duncan Ford and those of Elijah Ford. We think that the evidence establishes that the pre-scription of ten years had run as against William Duncan Ford before his death—he must have been thirty-four years of age at that time. He became of age in 1872 and died in 1885. R. L. Elliott purchased the property as we have seen in 1869. Elijah Ford must have be-come of age in 1883. Prescription as to him was not completed when this suit was brought. For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed as to all the plaintiffs—Elijah Ford excepted. It is further ordered, adjudged and decreed that the judgment be annulled, avoided and reversed as to Elijah Ford, and judgment is now rendered in his favor and against the defendants, recognizing and declaring him to be the owner of an undivided in-terest in the property mentioned in the petition to the extent of the interest inherited by him in the same. That interest not clearly appearing by the record as to its extent, the case is remanded to the lower court to have the same ascertained, fixed and declared; costs of appeal to be shared between the appellants, other than Elijah Ford, and the appellees in proportion to their respective interests.