## No. 11,746.

R. DANNEEL VS. JOHN KLEIN; R. DANNEEL VS. F. W. SHOTWELL; R. DANNEEL VS. JOHN KLEIN ET AL. (CONSOLIDATED).

The adjudicatee at a judicial sale made in execution of three orders of seizure and sale directed to the sheriff can not refuse to comply with his bid when a valid and legal title is conveyed through the execution of one of the writs, because the sheriff in the execution of the other two writs may have departed from their terms.

A sheriff holding two separate writs of seizure and sale, directing him, in the first, to seize and sell the undivided half interest of one of the joint owners of a piece of property, and in the second, to seize and sell " all the right, title and interest " of the other joint owner (who held also an undivided half interest) is without authority to advertise and sell the property as an entirety, ignoring the terms of the writs he was enforcing and disregarding the different ownerships of the undivided halves. The writ in the sheriff's hands is the warrant for his action. He can not seize and sell under different writs the property of different individuals between whom there is no privity.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

The plaintiff held three mortgage notes.   The first was the joint and several note of John Klein and George H. Shotwell as joint purchasers of twenty-four lots of ground in square No. 26, by special mortgage and vendor's privilege on the property in its entirety.

2. A note of John Klein, secured by mortgage on his undivided half of the twenty-four lots above mentioned and his undivided half of certain lots in square No. 30, owned in equal joint ownership between Shotwell and himself.

3. A note of the widow and heirs of George H. Shotwell, secured by mortgage upon " all their right, title and interest " in the twenty-four lots above-mentioned, and " *all their right, title and interest* " in the lots in square No. 30, in which John Klein owned an undivided half.

He instituted these proceedings, via *executive* upon each one of

these notes, and obtained three separate orders of seizure and sale, directing in each case that the property covered by the mortgage in that particular case should be seized and sold to pay plaintiff's claim there.

The sheriff, under the first two writs, followed, in making his seizures, the directions thereof, but under the *third* he seized in their entirety the properties in both squares.

In his advertisements he mentioned that his seizures had been made under the three writs, and that he would sell under them:

1. The twenty-four lots in square No. 26 in their entirely.

2. The lots in square No. 30, as a single body of land, and as a whole two separate adjudications were made, though the same person was the adjudicatee at both. The purchaser refusing to comply with his bid, he was ruled to show cause why he should not be compelled to do so.

He showed for cause that, in making the seizures and sales, the sheriff had departed from his orders in the writs, and because the powers of attorney given to Klein to accept service in behalf of same, the Shotwell heirs, in the matter of these proceedings was not by "authentic act."

The rule was made absolute and the purchaser was ordered to accept title. *He appealed.*

--------

*John F. C. Waldo* and *H. M. Danneel* for Plaintiff, Appellee.

--------

*Carroll & Carroll* for Defendant, Appellant.

--------

Argued and submitted, April 24, 1895.
Opinion handed down, May 6, 1895.

--------

The opinion of the court was delivered by

NICHOLLS, C. J.  The writs which issued in the three cases were not writs of *fieri facias*, vesting in the sheriff to whom they were directed a certain discretion as to the object which he was to seize, advertise and sell, but writs of seizure and sale, in which the precise object to be seized and sold was designated by the court, and from the terms of which writs the sheriff was in no wise permitted to depart.

59

Had the title tendered to the defendant to the first property adjudicated rested upon the proceedings taken in the first suit No. 43003, it is very clear that it would not have been such a title as the defendant was entitled to receive, for the writ which issued to the sheriff in that case ordered him to seize and sell, not the property in its entirety, but the undivided half interest of John Klein therein; it was, therefore, the duty of the sheriff to have seized, advertised and sold that interest, and nothing more. It is out of his power, under that writ, to seize, advertise and sell the entire property. Had he done so he would have deviated from the terms of the writ, which constituted for him his sole and only guide. 46 An. 338. In Landreaux vs. Foley, 13 An. 114, where the sheriff, who had been ordered to seize and sell the undivided half of a tract of land, seized and sold a specific portion of the land equal to the half of the tract, the court held the adjudication to be a radical nullity, declaring that the sheriff *had not sold that which he was commanded to sell;* that the question was not a question of compliance with legal formalities for divesting title by forced sale, but of a sale of one thing under color of an order to sell another thing totally different.

The title tendered would have been radically defective had it rested upon the proceedings taken under the writ which issued in the second suit No. 43,004, for by that writ the sheriff was ordered to seize and sell, not the whole property in square No. 26, but the " right, title and interest " of the defendant in that property. It was the sheriff's duty to have made the seizure accordingly, and to have followed it in his advertisement and in his sale. He was without authority to seize, advertise and sell the whole property.

But we think the title tendered was not dependent for its validity upon the proceedings either in suit No. 43,003 or suit No. 43,004. The proceedings taken in those cases could, so far as the question of *title* was concerned, be ignored if under those taken in the third suit No. 43,005 the title legally shifted to the purchaser. In our opinion the adjudication made to the defendant in the last mentioned suit conveyed to him a legal title. The sheriff seized, advertised and sold precisely what he was ordered by the writ and by the law to seize, advertise and sell. The validity of this adjudication was in no manner affected by an improper or imperfect seizure, advertisement or attempted sale made under the other two writs. The entire interest of both Klein and of George H. Shotwell passed by the sale. The

writs in the sheriff's hands in the other cases could only bear upon the question of the payment and application of a portion of the price. Had these writs not been in existence and in the hands of the sheriff at the time, the latter would have been charged with the duty of only collecting so much of the prices as would go to the seizing creditor. The balance of the price would have been retained by the purchaser, subject to hypothecary actions on the part of subsequent mortgage creditors, for, under such circumstances, the sheriff would not have been authorized to exact payment of the surplus. (See Braimer et als. vs. Hardy, Sheriff et als., 18 An. 542.) As it was, the sheriff with these writs in his hands, might be authorized to demand payment of the surplus of price to the extent it was demandable, under the writs in cases 43,003 and 43,004, out of the proceeds of the sale of this property, though the seizures under those writs were imperfect, improper and totally ineffectual to convey the title to the property itself.

We do not understand the defendant to raise any objection to the payment to the sheriff of the balance of the price of the first piece of property if the title itself should be held legal.

We do not think the objection raised to that title, on the ground that the power of attorney granted by some of the Shotwell heirs to John Klein to accept service for them in the case was not in authentic form, tenable. The requirements of the law as to the character of the evidence necessary to be produced in matters of executory process refer to the evidence which has to be submitted to the court as the basis upon which he is to act in granting an order of seizure and sale.

If, in point of fact, the power of attorney was that of the parties, the sheriff's acts based upon it would be legal. It is not suggested even that the power is not a genuine instrument. It might have been placed in a more satisfactory form, but we are now dealing exclusively with the legality of the proceedings. We think the purchaser should accept the title to the property first adjudicated to him and pay the price to the sheriff.

Matters in respect to the second property stand upon an entirely different basis.

The sheriff, instead of seizing, advertising and selling the undivided half interest of John Klein in the lots in square No. 30, and of seizing, advertising and selling separately "all the right, title and interest"

of the widow and heirs of Shotwell in that property, seized the undivided half of John Klein under the writ in suit No. 43,003, but seized the *whole of that property* under the *writ in suit No. 43,004* against Shotwell, *et al.*, and then advertised under the two writs that the property was to be sold as a single *body of land*, and did so sell it.

It is very clear that neither the seizure in the Shotwell case nor the advertisement nor the sale under the writs in suits Nos. 43,003 and 43,004 conformed to the writs. It is said that in point of fact Klein owned an undivided interest in the lots in Square No. 30 and the Shotwells owned the other undivided half, and that the plaintiff's two mortgages covered together the whole property, and therefore there was no injury done, as the plaintiff would take out of the sale nothing more or less than he was entitled to, but it is not a question here of injury, but of following out of certain fixed, well-defined legal principles. It may be true that in this particular case matters could and would so shape themselves a s that no harm would result from maintaining this special adjudication, but defendant has invoked the law applicable to the case, and we can not decline to enforce it. The trouble is that the sheriff has misunderstood the effect of his action and exercised a discretion utterly denied him. It is true that the two writs were held by the same plaintiff, and that they referred to undivided halves of the same property, but the rights of parties were as separate and distinct for the purpose of the execution of the writs as if the claims were held by different parties and the properties affected by the mortgages were entirely separate properties. It was out of the power of the sheriff in his advertisement, and through his adjudication, to consolidate or fuse together into a single whole the rights and obligations under the two distinct contracts. Such a course would give rise to interminable difficulties, and to questions not easy of solution. It would besides, in many instances, work positive hardship and wrong.

In Mayor vs. Armant, 14 An. 181, we held that the cumulation of a demand for the partition of succession property with a demand for the partition of property held in common, where there is no privilege of estate between all the parties, plaintiffs and defendants, is not authorized by the rules of pleadings, and we assigned reasons for the existence of such a rule.

In Savage vs. Williams, 15 An. 252, we applied the same doctrine, and held that an administrator of a succession could not encumber a

sale by requiring the purchaser to buy other property than that of the intestate, and in Howcott vs. Board of Levee District, 46 An. 322, that the property of one person could not be sold confusedly with those of others where there is no privity of estate between the parties.

This was merely a repetition of the doctrine announced in McWilliams vs. Michel, 43 An. 988, and in Person vs. O'Neil, 32 An. 232.

In accepting a mortgage the creditor deals exclusively with the mortgagor. He has in view *his* property, *his* financial ability and *his* creditors. In the enforcement of his mortgage he can not, through any act of the sheriff, be brought into entanglement with the creditors of another person, or into possible complicated responsibilities resulting from bringing his debtor's property into relations with that of another person which has no legal connection with it. The title to one of the undivided halves might be perfectly good and the other bad.

Each seizing creditor is entitled to have his responsibility as such limited to the title conveyed in execution of his own mortgage, and he can not be made to have it broadened through the sheriff's selling and adjudicating at one and the same time, as a single object, the property seized for him with other property in respect to which the seizing creditor is legally a stranger. Again, if under writs of seizure and sale, issuing from two divisions of the District Court, directing the seizure and sale of distinct, undivided halves of the same property belonging to different owners, the sheriff should sell the property as a whole, it should turn out that each half should be affected by mortgages or privileges of its own under the different ownerships—the course pursued would give rise to contentions between the creditors and the parties exceedingly difficult of adjustment and apportionment—contentions not legitimately arising from the legal situation of affairs, but purely through the action of the executive officer of the court.

It may be said that parties, by standing by and seeing the sheriff's acts brought to completion without protest or objection, would show a willingness to accept the responsibilities and legal results of the situation, and that the court is setting up as it were in this case for the seizing creditor claims which not only he does not advance, but which are in direct opposition to those which he urges. We are not, in what we have said, been referring to the present plaintiff. We

have simply assigned reasons why the course pursued in this case should not be sanctioned. In Levick vs. Walker, 15 An. 246, this court said that " parties could regulate their own conduct by their stipulations, but they can not prescribe rules of proceeding for public officers, nor demand that courts of justice should depart from the usual mode of enforcing their decrees."

" If before judgment, the creditor may stipulate the manner in which the same shall be executed, the principle will sanction an endless variety of modes of execution of judgments, and indeed, the parties may waive all formalities and all delay, and may even consent that some other person than the sheriff shall sell the property of the debtor and execute the decree of the court. And if a decree giving effect to such contract be legal, then also the sale under it would be legal, and other creditors might find themselves deprived of their common pledge without notice. In view of our complicated system of mortgages and privileges and the restriction upon sales where parties are in insolvent circumstances, as well as the responsibility imposed by our law upon the sheriff and his sureties, we are of the opinion that such stipulations can not be enforced. If they be not immoral, they may be considered as affecting the rights of others and void."

In Solomon vs. Deifental, 46 An. 904, referring to an agreement between the parties in regard to the issuing of an injunction, we said: " The agreement of the parties in this matter is of no importance. Parties are much more free to make contracts than they are to regulate and stipulate as to the legal remedies" (citing 15 An. 246). The same idea finds expression in Wheelwright vs. Transportation Co., 47 An. 540.

In the case at bar, in addition to what we have just said, there are mortgage creditors upon the second property, which was adjudicated, whose conduct in the future is unknown. We do not think the adjudicatee can be called on to take risks in the matter. If this sale has any validity, it is by consent of parties and not by force of the law and the effect of the writs in the sheriff's hands.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from, making absolute the rule filed in the cases Nos. 43,003, 43,004 and 43,005 on September 10, 1894, be and the same is hereby annulled, avoided and reversed in so far as it condemns Thomas H. Watson, adjudicatee at sheriff's

sale on August 14, 1894, of eight certain lots of ground in the Sixth District of New Orleans, in square No. 30, Burtheville, bounded by Magazine, Calhoun and Camp streets and Henry Clay avenue, Nos. 11 to 18 inclusive, and part of lot 21 in said square, and fully described in the rule taken by plaintiff for the sum of thirty-three hundred and fifty dollars to accept title to said property and to pay the price thereof to the sheriff in accordance with the terms of the adjudication to him, and it is now ordered, adjudged and decreed that defendant be and he is hereby relieved and released from the adjudication made to him of said property, and the adjudication to him of said property is decreed null, void and of no effect. It is further ordered, adjudged and decreed that the judgment appealed from, except in so far as it is just herein above annulled, avoided and reversed, be and the same is hereby affirmed. Appellee to pay the costs of appeal. Defendant and appellant to pay the costs of the District Court.