(105 So. 21)

No. 25568.

**FORREY et al. v. STRANGE.**

(May 25, 1925. Rehearing Denied June 22, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Mines and minerals** ⚖️➞54½—**New, vol. 6A Key-No. Series—Neither sheriff nor bidder at foreclosure sale of mortgaged oil leases had right to change terms of sheriff's writ of commission.**

Neither sheriff nor bidder at mortgage foreclosure sale had right to change terms of sheriff's writ, the owner of the mortgaged oil leases being the only person who could consent to a sale thereof otherwise than in accordance with writ.

2. **Mines and minerals** ⚖️➞54½—**New, vol. 6A Key-No. Series—Whatever was bid at mortgage foreclosure sale of lease deemed bid for what sheriff was authorized and directed to sell.**

Where sheriff's writ called for the sale of mortgaged oil and gas leases, full amount bid must be deemed as bid for the leases, and whatever went with them, though mortgagee bid more than amount due him to cover lien claimed by seller of machinery.

3. **Sales** ⚖️➞306—**Vendor's lien extends only to thing remaining in buyer's possession, and not paid for and only to extent of unpaid price thereof.**

Under Rev. Civ. Code, arts. 3227–3231, vendor's lien extends only to thing for which price has not been paid, and to extent of unpaid price thereof, and only when article remains in possession of buyer, and there can be no lien on all property sold for balance due on running account.

4. **Payment** ⚖️➞43—**Payments on open account imputed to things first sold, unless there is special agreement.**

Payments on open account must be imputed to price of things first sold, unless there is special agreement to contrary, in view of Rev. Civ. Code, arts. 2163–2166.

5. **Sales** ⚖️➞306—**Seller selling articles on open account has no lien, on articles sold and paid for, for unpaid price of articles afterwards sold but not paid for.**

Where the first articles sold on open account are paid for, the seller has no lien on such articles for the unpaid price of articles afterwards sold but not paid for.

6. **Sales** ⚖️➞306—**Seller has no vendor's lien for unpaid price of such articles as have been disposed of by buyer.**

Seller has no vendor's lien for unpaid price of such articles as have been disposed of by buyer.

7. **Sales** ⚖️➞313—**Seller held to have lost vendor's lien by allowing articles to be sold confusedly with other things, without demanding separate appraisement.**

In view of Rev. Civ. Code, art. 3228, seller *held* to have lost vendor's lien by allowing articles to be sold at mortgage foreclosure sale of oil and gas leases confusedly with other things, without demanding at least separate appraisement thereof.

8. **Mines and minerals** ⚖️➞54½, **New, vol. 6A Key-No. Series—Mortgage on lease covered all machinery and appurtenances destined to develop and operate such leases.**

Mortgage on oil and gas leases, under Act of 1910, No. 232, covered all machinery and appurtenances destined to develop and operate such leases.

9. **Estoppel** ⚖️➞94(2)—**Trustees for holders of mortgage bonds not estopped by acts of individual bondholders.**

Trustees for holders of bonds of oil company, secured by second mortgage, alone have authority to represent the bondholders, and acquiescence of individual bondholders or their representatives in disposition of proceeds of sale under prior mortgage did not estop the trustees.

10. **Mortgages** ⚖️➞569—**Purchaser at sheriff's sale must pay to sheriff amount called for by writ, and retain excess to be applied to payment of junior mortgages.**

It is duty of purchaser at sheriff's sale to pay to sheriff only amount called for by writ, and retain in his hands amount of his bid in excess thereof, to be applied to payment of junior mortgages.

11. **Mortgages** ⚖️➞569—**Purchaser paying to sheriff excess above amount called for by writ constitutes sheriff his agent.**

Purchaser at sheriff's sale, paying to sheriff amount of bid in excess of amount called for by sheriff's writ, constitutes sheriff his agent for purpose of applying excess on junior mortgages.

**12. Mortgages** ⟨⟩⟨⟩**568—Junior mortgagees, on whose claims sheriff failed to apply surplus, may proceed against property by hypothecary action.**

The application by sheriff of amount received from bidder, in excess of the amount called for in his writ, to payment of other claims cannot prejudice junior mortgagees, who, under Code of Practice, arts. 707, 708, 709, may proceed against the property by a hypothecary action.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Hypothecary action by Frank M. Forrey and another against W. G. Strange. Judgment for plaintiffs, and defendant appeals. Affirmed.

W. W. Thompson, of Leesville, and Crain, Benoit & Jackson, of Shreveport (Leon Sugar, of Lake Charles, of counsel), for appellant.

Cook & Cook, of Shreveport, for appellees.

ST. PAUL, J. On January 19, 1919, defendant and three associates sold to the Globe Oil Company a certain oil lease for $300,000; of which $60,000 was paid cash, and the balance secured by mortgage on said lease. On the same day the Peerless Oil Company sold to said Globe Oil Company another oil lease for $450,000; of which $90,000 was paid cash, and the balance secured by mortgage on said lease.

It appears also that defendant and his associates were the principal stockholders of the Peerless Oil Company; that the sale of both leases was negotiated as a single transaction for $750,000, of which $150,000 was to be paid cash, and the balance on terms, the stockholders of the Peerless Company approving the division by which the company received 60 per cent., and defendant and his associates 40 per cent. thereof. But mention is made of all this simply to show that defendant and his associates had an interest in both mortgages when defendant purchased at the foreclosure sale hereinafter mentioned.

### I.

The Globe Oil Company thereupon went into possession of and operated said leases, purchasing for that purpose, on open account, from the Continental Supply Company, some $40,481.34 of "machinery, oil well supplies, tools, wares, and merchandise"; upon which certain partial payments were made, reducing the amount due on February 1, 1920, to a balance of $21,339.71.

Meanwhile, on February 15, 1919, the Globe Oil Company had granted a *second* mortgage on these (and other) leases to secure certain bonds aggregating $2,000,000; in which mortgage (and deed of trust) plaintiffs Frank M. Forrey and the Fort Dearborn Trust & Savings Bank of Chicago have been constituted trustees for the bondholders.

### II.

In May, 1920, there was still owing to defendant and associates a balance on their mortgage of $80,000, with interest at 6 per cent. from January 19, 1919, and attorneys' fees at 2½ per cent.; and to the Peerless Oil Company a balance of $120,000, with like interest and attorneys' fees. And said amounts being then past due, both creditors took out executory process (foreclosure proceedings), each against the lease on which it held a mortgage.

Both leases were advertised for sale (and were sold) on the same day, to wit, July 3, 1920. On which day, with interest, attorneys' fees and costs, the claim of defendant and associates amounted to $90,313.03, and that of the Peerless Oil Company to $136,690.30. And on that day the claim of the Continental Supply Company amounted, with legal interest from February 1, 1920, to $21,824.71; for which amount said company claimed a vendor's lien and privilege upon such machinery, supplies, and tools furnished by it

to the Globe Oil Company, as might be found upon the seized premises and capable of identification.

### III.

Both leases had been ordered sold without appraisement, the benefit thereof having been specially waived in both mortgages. But defendant was desirous of protecting both mortgages, in both of which he had an interest as aforesaid. It was his intention, therefore, to bid at the sale up to the full amount of said mortgages, with interest, etc., *but to bid no more;* and he made that intention known to whoever appeared to take sufficient interest in the affairs of the Globe Oil Company (then in bankruptcy), and of its bondholders, to make any inquiries on the subject. The evidence does not show that plaintiffs made any such inquiries, either in their capacity of trustees for the bondholders or otherwise.

### IV.

But the Continental Supply Company, in order to protect its vendor's privilege, was about to demand an appraisement and separate sale of the property on which it claimed such privilege.

Whereupon counsel representing plaintiffs in the foreclosure proceedings (who also represented this defendant in the purchase he made at the foreclosure sale) investigated the claim of the Continental Supply Company, and having been satisfied that the claim was due, and that the property sold by the Supply Company to the Globe Company could be identified, entered into a written engagement with the attorney for the Supply Company, whereby it was agreed:

" * * * That, in order to save costs and expenses the aforesaid property sold by the Continental Supply Company (to the Globe Oil Company) be this day sold under the foreclosure proceedings without being separately appraised and separately sold; but that $21,-339.71 of the sales price of said property in the foreclosure proceedings be set aside as the proportionate part paid for the property shown in the list hereto annexed and made part hereof, and on which the Continental Supply Compay has its vendor's lien and privilege; and it is agreed that its vendor's lien may be recognized and enforced against the said sum of $21,339.71, plus interest from February 1, 1920, the same as if the said property had been separately appraised and sold for the said sum of $21,339.71, plus interest from February 1, 1920 (i. e., $21,824.71). The admissions herein are made upon the assumption that no third party has any adverse interest."

### V.

Accordingly, when the leases were cried out for sale, counsel who bid for this defendant increased his intended bids by the full amount of the Supply Company's claim; adding 40 per cent. thereof, or $8,731.90, to his bid on the *Strange* lease, and 60 per cent. thereof, or $13,092.81, to his bid on the *Peerless* lease. Hence the *Strange* lease was adjudicated to defendant for $99,044.90; which bid, according to the procès verbal and return of the sheriff, *"included $8,731.90 bid for the property sold by the Continental Supply Company, located on the said lease, and on which said company claims a vendor's lien and privilege";* and the *Peerless* lease was adjudicated to defendant for $149,783.11; which bid, according to the procès verbal and return of the sheriff, *included $13,092.- 81 bid for the property sold by the Continental Supply Company, and located on said lease, and on which said company claims a vendor's lien and privilege."*

The full amount of the Supply Company's claim, $21,824.71, was thereupon paid by the sheriff to its attorney ($8,731.90 plus $13,092.81), and the balance of said purchase price, less the costs, was paid to the attorney for the plaintiffs in the foreclosure, being the amount of their claim with interest and attorneys' fees according to the bid originally intended by defendant (to wit, $89,- 380 on the *Strange* mortgage, and $134,170 on the *Peerless* mortgage).

## VI.

Plaintiffs, as trustee for the bondholders, whose bonds (as we have said) were secured by the *second* mortgage on the two oil leases aforesaid, bring this strictly "*hypothecary action,* properly speaking," by which, "If the hypothecated property be neither in the possession of the debtor nor of his heirs, but in that of a third person, the creditor has his action against that person, in order to compel him either to give up the property or pay the amount for which it stands hypothecated." Code of Practice, art. 68.

Their claim is that defendant's bids must be held to be, in contemplation of law, simply a flat bid of $99,044.93 for the *Strange* lease, and a flat bid of $149,783.11 for the *Peerless* lease; that the Continental Supply Company had no vendor's lien or privilege for the balance due it on open account; and if it ever had one, then same was lost by failing to demand a separate appraisement and separate sale of the property on which it claimed such privilege, and allowing same to be sold confusedly with other property; that accordingly, the excess of $8,731.90 on the *Strange* lease and of $13,092.81 on the *Peerless* lease, which he bid above the amount of the first mortgage claim thereon, inured to the benefit of the holders of the *second* mortgage aforesaid, and should have been retained by defendant (or paid over to plaintiffs) to be applied on said second mortgage.

On the other hand, defendant contends that the plaintiffs are estopped in the premises for having consented to the sale and distribution of proceeds as made; that the property sold by the Continental Supply Company to the Globe Oil Company was never subject to plaintiffs' mortgage; that his bids were, in fact and in law, $90,313.03 for the *Strange* lease and $136,690.30 for the *Peerless* lease, and $21,824.71 ($8,731.90 plus $13,-092.81), for the movable property thereon, in which plaintiffs had no interest.

## VII.

[1, 2] We think the bid at sheriff's sale must be taken as a flat bid for *the leases* and whatever went with them. The defendant in the executory proceeding was the owner of the leases and of all the property in the leased premises; and no one but the owner of that property could consent to a sale thereof otherwise than in accordance with the writ held by the sheriff. That writ called for the sale of the leases themselves, and whatever was bid at the sale was bid for what the sheriff was authorized and directed to sell. Neither the sheriff nor the bidder had any right to change or alter in any way the terms of the writ, which was the only authority under which the sheriff could proceed. In Doucet v. Fenelon, 120 La. 18, 44 So. 908, this court held:

"The writ or commission directed by the court to the sheriff to sell certain property constitutes for him his sole guide. He has no authority to deviate from its terms. * * *" (Syllabus No. 3)—citing Landreaux v. Foley, 13 La. Ann. 116; Danniel v. Klein, 47 La. Ann. 928, 17 So. 466; Ford's Heirs v. Mills, 46 La. Ann. 338, 14 So. 845.

See, also, Succession of Bright, 38 La. Ann. 141.

## VIII.

[3] The Continental Supply Company had no vendor's lien upon *all* the movable property on the leased premises. Its claim was for a balance due on a running account. The law allows no vendor's lien for a general balance upon all the property sold and delivered and charged for in said account. The law is, that the vendor's lien extends only to the very thing for which the price has not been paid, and only to the extent of the unpaid price thereof; also, only if the thing still remains in the possession of the purchaser. R. C. C. 3227 to 3231.

[4-6] Manifestly, payments on open account must be imputed to the price of the things first sold, unless specially agreed otherwise. R. C. C. 2163 to 2166. Hence the Continental Supply Company had been *paid* the price of the articles first sold, and had no vendor's lien on such property for the unpaid price of the things afterwards sold; nor had it any vendor's lien for the unpaid price of such things as had been disposed of.

### IX.

[7] Moreover, whatever vendor's lien the Continental Supply Company may have had for the unpaid price of such articles as still remained in the possession of the vendee, it lost by allowing same to be sold confusedly with the other things sold without demanding at least a separate appraisement thereof. R. C. C. 3228; see Legendre v. McCall's Estate, 136 La. 947, 68 So. 86, and authorities there cited.

### X.

[8] On the other hand, plaintiffs here had a mortgage under Act 232 of 1910, p. 393, on all such machinery and appurtenances as were destined to the development and operation of the oil leases (Choate Oil Corporation v. Glassell, 153 La. 715, 96 So. 543), and at this time it is impossible to separate such things from the rest of the things standing on the leased premises at the time of the seizure and sale.

### XI.

[9] We find nothing in the evidence to show that these plaintiffs acquiesced in the manner in which the proceeds of sale were distributed by the sheriff. It is quite true that certain individual bondholders, and representatives of individual bondholders, of the Globe Oil Company, knew and acquiesced in what defendant and the sheriff purposed to do. But the evidence satisfies us that these were not representatives of the trustees, who alone were authorized to represent all the bondholders. They were mere volunteers, *and acted entirely without any authority whatsoever* from the trustees, plaintiffs here. The estoppel pleaded is therefore not well founded.

### XII.

[10-12] It is well-settled jurisprudence in this state that it is the duty of a purchaser at a sheriff's sale to pay to the sheriff only the amount called for by the writ, and to retain *in his own hands the amount of his bid* in excess thereof to be applied to the payment of junior mortgages; and if he fails to do so, but pays same to the sheriff, he constitutes the latter his own agent for that purpose; and an application by the sheriff of such surplus to the payment of other claims cannot prejudice the junior mortgagees, who may proceed against the property by the hypothecary action aforesaid. Code of Practice, 707, 708, 709; Pepper v. Dunlap, 16 La. 163; Merchants' Bank v. Peters, 2 Rob. 214; Scott v. Featherston, 5 La. Ann. 306; Quertier v. Succession of Hille, 18 La. Ann. 65; Johnson v. Duncan, 24 La. Ann. 381; Bacas v. Hernandez, 31 La. Ann. 86; Robinson v. Cosner, 136 La. 595, 67 So. 468.

We see no error in the judgment below.

### Decree.

The judgment appealed from is therefore affirmed.