OVERTON, J.
 

 W. G. Strange and three associates, acting together, and the Peerless Oil Company, acting on its own behálf, each instituted suit against the Globe OR Company to foreclose a vendor’s lien and special mortgage, resting on certain oil leases and their equipment, located in the parish of Caddo. Following the transaction giving rise to the vendor’s lien, in which the special mortgage was granted, but prior to the institution of the foreclosure proceedings, the Globe Oil Company purchased from defendant herein certain machinery, tools, wares and merchandise on open account, amounting to $40,-481.34, which it placed upon the leases to be used in developing and operating them, and to which, therefore, the special mortgage granted by it attached. The Globe Oil Company made payments on this indebtedness due defendant, as a result of which there was due upon it, on February 1, 1920, a balance of $21,339.71, with 5 per cent, per annum interest thereon from that date until paid. On July 3, 1920, the day of the foreclosure sale, there was due on this indebtedness, including interest, $21,824.71; on the claim due to Strange and his associates, including interest, attorney’s fees, and costs, $90,313.03; and on that due to the Peerless Oil Company, including interest, etc., $136,690.30. Defendant claimed a vendor’s privilege upon such of the machinery and other articles that it sold the Globe Oil Company as could be identified, and was about to file a third opposition, claiming its privilege, and to demand a separate appraisement and sale of the property, in order to protect the privilege claimed by it. Counsel then representing Strange and his associates and the Peerless Oil Company, learning of this intention, investigated the claim of defendant and, reaching the conclusion that the claim was due, that the property could be identified, and that the privilege existed, entered into the following arrangement with counsel for defendant, to wit:
 

 “Whereas, the Continental Supply Company (defendant herein) has a vendor’s lien and privilege in the sum of twenty-one thousand three hundred and thirty-nine and 7Vioo' ($21,339.71)
 
 *23
 
 dollars, with 5 per cent, per' annum interest thereon from February 1, 1920, for machinery, oil well supplies, tools, goods, wares, and merchandise sold and delivered to the defendant Globe Oil Company and now located on said leases in question, and as shown by list of property hereto attached and made a part.hereof:
 

 “Therefore it is agreed that, in order to save costs and expenses, the aforesaid property sold by the Continental Supply Company be this day sold under the foreclosure proceedings without being separately sold; but it is further agreed that $21,339.71 of the sales price of said property in the foreclosure proceedings be set aside as the proportionate part paid for the property, shown in list hereto attached and made a part hereof, and on which the Continental Supply Company has its vendor’s lien, and privilege, and it is agreed that its vendor’s lien and privilege may be recognized and enforced against the said sum of $21,339.71, plus interest from February 1, 1920, the same as if the said property had been separately appraised and sold for the sum of $21,339.71, plus interest from February 1, 1920.
 
 The admissions herein are made upon the assumption that no third party has any adverse interest.”
 
 (Italics ours.)
 

 Strange intended, prior to the foregoing agreement, to bid for the leases, with their equipment, only the full amount of the mortgages that were being foreclosed, with interest, attorney’s fees, and costs; but, after entering into that agreement, he, on the day of sale, through his counsel, increased his intended bid on the lease offered for sale in the suit commenced by him and his associates, by adding thereto 40 per cent., or $8,-731.90, and increased his intended bid on the lease of the Peerless Oil Company by adding thereto 60 per cent., or $13,092.81, thus increasing both intended bids to the full amount of defendant’s claim; that is, to the extent of $21,824.71.
 

 The property was adjudicated to Strange on the bids made by him. Strange paid the entire amount of his bids to the sheriff, who, after paying the costs, paid out of the sum received $21,824.71, the full amount of defendant’s claim, to defendant, and the balance to the plaintiffs in the foreclosure suits, which was enough to pay them in full;' the plaintiffs in the suits commenced by Strange and his associates receiving $89,380, and the Peerless Oil Company $134,170.
 

 At the time of the commencement of the fóreclosure suits, and the making of the foregoing agreement, and on the day of the foreclosure sale, there rested on the property sold a second mortgage, granted by the Globe Oil Company to secure the payment of certain bonds issued by it, aggregating $2,000,-000. After the sheriff had disbursed the proceeds of the sale, Frank M. Forrey and the Ft. Dearborn Trust & Savings Bank of Chicago, as trustees of the bondholders, brought an hypothecary action, in which they alleged that defendant herein, the Continental Supply- Company, had no vendor’s privilege for the balance claimed by it on open account; that, if it ever had such a privilege, it lost it by failing to have the property on which it claimed the privilege separately appraised and sold, and by permitting the property on which its claim rested to be sold confusedly with other property included in the foreclosures; that, since the defendant herein either had no vendor’s privilege or had lost it, the excess of $21,824.71, bid by Strange on the two leases and the property attached to the same, above the first mortgage, under foreclosure, inured to the benefit of the second mortgage, securing the bondholders.; and that Strange should either have paid that excess, to-be applied on the second mortgage, or have retained it for payment thereon, instead of permitting the sheriff to pay it to the Continental Supply Company. In that action the trustees for the bondholders prayed that Strange be either required to surrender the property bid in by him, or else pay to them the excess bid by him above the first mortgage. In the trial court, judgment was rendered in that case, in favor of the trustees, the plaintiffs therein, holding that defendant had no vendor’s privilege on the’ proceeds of the foreclosure sales, and order
 
 *25
 
 ing Strange either to surrender the property-bid. in by him or to pay them said excess of $21,824.71. This court, on appeal, held that defendant had no vendor’s privilege on all the movable property on the leased premises; that the law does not allow such a privilege on all the property sold on open account to secure a balance due thereon, but only upon the particular thing sold, the price for which has not been paid, and only to the extent of the unpaid price therefor; that whatever privilege defendant herein might have had it lost by permitting the property on which it claimed the privilege to be sold confusedly with other property, and accordingly held that the trustees for the second mortgage creditors were entitled to payment in preference to the defendant herein, and accordingly rendered judgment affirming the judgment of the lower court. Forrey et al. v. Strange, 158 La. 941, 105 So. 21. In the case cited, a complete statement of the facts there involved, which •enter into this case, will be found, substantially as here set forth.
 

 Strange elected not to surrender the property bid in by him, but to pay the foregoing excess of $21,824.71 to the trustees for the bondholders, secured by the second mortgage. Having so paid that excess, he then instituted fhe present suit to recover that amount from the Continental Supply Company, the defendant herein, together with 5 per cent, per annum interest thereon from July 3, 1920, the date on which he alleges that he, through the sheriff, paid the amount to defendant. His suit is based upon allegations showing that he, through the sheriff as his agent, erroneously paid said sum to defendant, instead of to the trustees for the second mortgage creditors.
 

 The defenses to this demand, among others, are that the amount paid defendant by plaintiff was not paid in error; that plaintiff, In making the payment, was cognizant of all the facts in the case; that, if there was-any error, it was purely one of law, not invalidating the payment; that the payment was made under the agreement, copied in full above, entered into by him and the remaining plaintiffs in the foreclosure suits, on the one part, and by defendant, on the other part, by which defendant’s vendor’s privilege on the property sold by it was recognized, and by. which a certain amount out of the price to be realized at the foreclosure sales was to be set aside, and the right given defendant to enforce its privilege on the fund set aside, as if the property on which the privilege was recognized had been separately appraised and sold; that the amount so paid was the amount so set aside, and in no wise represented a surplus of proceeds above the writs in the foreclosure suits, but was the amount due defendant under the agreement, and would have been due defendant under it, whether the amount of the writs had been realized at the foreclosure sales or not. In connection with these defenses, defendant also filed a plea of estoppel, in which he avers that plaintiff made the only bids that were made at the foreclosure sales; that the property was offered at those sales without the benefit of appraisement; that therefore the bids made by him, to the extent that they were in excess of the* writs under which the sales were made, were entirely unnecessary ; and that, since plaintiff deliberately and knowingly created a surplus over the writs, necessitating a payment of the surplus to the trustees, representing the second mortgage creditors, he must bear the consequences of his act, and is therefore estopped from claiming a refund from defendant. On the other hand, plaintiff’s position is that the bids made by him were those he was expected to make; that since the agreement, recognizing defendant’s vendor’s privilege and setting a fund aside out of- which it could be paid, contains a provision to the effect that the admissions therein contained are. made on the
 
 *27
 
 assumption that no' third person has an adverse interest, and that since the second mortgage creditors, who are third persons to the agreement, have forced him to pay them the surplus, one of the things intended to be guarded against by the insertion of the foregoing provision, relative to admissions, has happened, as a result of which the admissions ceased to be effective, and he is accordingly entitled to recover back the amount paid to defendant. Plaintiff also urges that defendant’s position, as shown by its plea of estoppel, outlined above, to the effect that Strange, having of his own accord, and without occasion so to do, bid an amount in excess of what he was required to bid, under the writs in the foreclosure suits, or by the agreement, or both, thereby creating the surplus, which he was later forced to pay the trustees for the second mortgage creditors, is directly in conflict with the position taken by defendant herein, in the case of Eorrey et al. v. Strange, wherein the present defendant was called in warranty by Strange, and, in its answer to the call, averred substantially that the agreement, quoted supra, was to the effect that the agents of the plaintiffs, in the foreclosure suits, as well as the agents for the trustees of the second mortgage creditors, agreed to purchase all the property seized in the foreclosure suits for a sufficient amount to satisfy the claims of the plaintiffs therein, together with the claim of defendant herein, and that, had it not been for that agreement, there would have been no bid creating a surplus over and above the claims of the plaintiffs in the foreclosure suits, and that, these averments being in conflict with defendant’s present position, defendant is estopped from taking its present position as to the gratuitousness of Strange’s bids in excess of said writs.
 

 The transcript originally filed in this court does not contain the answer to the call in warranty, upon which the estoppel last mentioned is based; but plaintiff, since the submission of this appeal, has filed informally a supplemental transcript containing it. Defendant has moved to strike the supplemental transcript from the record, because of the informal manner in which it was brought up, and moreover contends that the answer contained in it was never actually filed in the trial court, in the suit by the second mortgage creditors, although it is found in the record therein.
 

 We find it unnecessary to pass upon the motion to have the supplemental transcript stricken from the record. The averments in the answer, in their essential particulars, were merely defendant’s construction of a written agreement at the time the averments were made, and its opinion of what the result would have been, had the agreement, thus construed, not been entered into. These averments were not misleading to any one. Defendant gained nothing by them. In fact, it was not granted a hearing upon the averments contained in the answer, for the answer was disallowed, as was also the call in warranty to which it was offered in response, on objections urged by the plaintiffs in that suit. Therefore defendant stands in the position of one who has not only pleaded its construction of a written agreement, and its opinion of what the result, as it then construed the agreement, would have been, had the agreement not been entered into, but also in the position of one who has pleaded that construction and opinion unsuccessfully in another suit. In these circumstances, we think that defendant is not estopped from taking its present position with reference to that agreement.
 

 As relates to the right of plaintiff to recover in this suit, much depends, we think, upon whether the agreement, quoted supra, contemplated that a bid should be made, exceeding the aggregate amount of the writs in the foreclosure suits, in a sum sufficient to
 
 *29
 
 pay defendant its claim, and that defendant should be paid out of the surplus so created, and upon the effect to be given the clause in that agreement, concerning the existence of the vendor’s privilege, claimed by defendant, and its right to recover on the privilege, the clause being to the effect that the admissions, made in the agreement, are made upon the assumption that no third party has an adverse interest.
 

 In passing upon the right of plaintiff to recover herein, it should be observed that the Globe Oil Company, the judgment debtor in the foreclosure suits, and the second mortgage creditors were not parties to the agreement, but that the agreement was entered into between the foreclosing creditors and defendant alone. It should also be observed that the foreclosing creditors were the first mortgage creditors. From these undisputed facts it follows that the plaintiffs in the foreclosure suits, in so far as appears from the record, had a right to contract effectively with defendant in the present suit as to what disposition should be made of the proceeds to be derived from the sale of the property that was being foreclosed upon, but only to the extent of the writs in those suits. The plaintiffs in those suits could. not have agreed effectively that defendant should have the-surplus beyond the writs that issued in them, because the second mortgage creditors, at least, in view of the consent of defendant herein, as shown by the agreement, that the property upon which it claimed' the privilege should be sold confusedly with the remaining property which was being foreclosed upon, would as an elementary principle, upon the property’s being so sold, be entitled to the surplus to the extent of their mortgage, and if the second mortgage creditors should, by any possibility, not be entitled to the surplus, still the plaintiffs in those suits could not have contracted effectively as to it, because in that event the Globe Oil Company, the judgment dfebtor in them, would have been entitled to it. Nor is there anything in the agreement which indicates that the parties to it intended to contract with reference to an amount in excess of the writs, or, in other words, with reference to a surplus, nor is there anything in the agreement indicating that any one was bound to see that bids sufficient in amount should be made to create a surplus. Under these circumstances it would seem that what the plaintiffs in those suits, among whom was the present plaintiff, had in view, in making the agreement with the defendant herein, was the recognition of the latter’s vendor’s privilege on a part of the property to be sold, and, in consideration of defendant’s not forcing a separate appraisement and sale of the property upon which it claimed its vendor’s privilege, the setting aside of a fund out of the purchase price to be obtained within the writs that were being executed, and not out of the purchase price beyond the writs, against which defendant could enforce its vendor’s privilege, for only to the extent of those writs was the price to be obtained under the control of the plaintiffs in execution.
 

 Not only do we think that the parties to the agreement contemplated that a fund out of the purchase price, within the amount of the writs, should be set aside for the satisfaction of defendant’s vendor’s privilege, but we also think, by the same line of reasoning, that when the parties to the agreement wrote into it that the admissions therein made (referring to the recognition of defendant’s asserted vendor’s privilege and its right to enforce it) are made upon the assumption that no third party has an adverse interest, they referred to an interest adverse to the plaintiffs in the foreclosure suits, as contended for by defendant, to the extent of the writs that issued in those suits, and not to any interest adverse to them, or to any one of
 
 *31
 
 them, beyond the amount of those writs. Hence, when plaintiff herein, who was a plaintiff in one of the foreclosure suits,, in complying with the judgment of this court in the suit of Forrey et al. v. Strange, paid to the trustees for the second mortgage creditors the excess over the writs in those suits, he did not pay a claim adverse to himself, within the amount of the writs, but only beyond that amount. Therefore it cannot be said that the condition or event contemplated by the provision under consideration has happened, and therefore, in this instance, that provision can be of no avail to plaintiff herein.
 

 There is another question, touching plaintiff’s right to recover, which should be considered before leaving the phase of the case now under consideration. That question relates to the necessity for the bids made by plaintiff in excess of the writs, thereby creating the surplus which brought about the litigation by the second mortgage creditors in the suit entitled Forrey et al. v. Strange, and which also resulted in causing the present suit. In this connection it should be observed that the property in the foreclosure suits was offered without the benefit of appraisement. There is nothing in the agreement, entered into between the plaintiffs in those suits and the defendant herein, relative to the amount that any one should bid at those sales, or binding any one to bid an amount in excess of the writs under which the sales were to be made. Nevertheless plaintiff herein, although he was the only bidder at the sales, bid in excess of the writs. He did so because he thought, though erroneously so, that he had a valid understanding with the receiver of the defendant in execution, and persons representing themselves to be the agents of the second mortgage creditors, to the effect that the claim of the defendant should be recognized, and bids made, sufficient to cover that claim and the claims' of the foreclosing creditors. However, defendant herein was not a party to such an understanding, and had nothing to do with it. Therefore, by having such' an understanding with others, and acting upon it, plaintiff brought about the situation which resulted in the Forrey suit and in the present suit. Had plaintiff not had that understanding, or if he had not bid in excess of the writs, which was wholly unnecessary, the present situation could not have arisen; for, as plaintiffs in the foreclosure suits were first mortgage creditors, they were entitled to payment to the extent of their mortgage in preference to the trustees for the second mortgage creditors, and, as relates to defendant herein, its privilege, which plaintiffs in the foreclosure suits had recognized, would still have remained secure, for, having been recognized by the plaintiffs in those suits, that privilege primed their mortgage upon the fund on which it was recognized. Therefore plaintiff herein, having brought about the present situation unnecessarily, should stand the consequences of his own act, and not seek to hold defendant responsible for it.
 

 Our conclusion is that, plaintiff having paid defendant what was due it under the terms of the agreement, and it appearing that the agreement was entered into for the purpose of avoiding litigation, with all of the essential facts before plaintiff, there can be no recovery upon the ground of payment in error. C. C. art. 1846.
 

 For the reasons assigned, the judgment appealed from is affirmed.