**(96 South. 543)**

No. 25384.

**CHOATE OIL CORPORATION v. GLASSELL et al.**

(Dec. 29, 1922. Rehearing Denied April 30, 1923.)

*(Syllabus by Editorial Staff.)*

**1. Estoppel ⬦68(2)—Plaintiff alleging in prior suit that it was in possession of property cannot contend that it had lost possession by reason of sale.**

Where plaintiff suing to annul sheriff's sale on mortgage foreclosure alleged that it was in actual corporal possession, it could not contend, in suit to annul subsequent sale, that its possession was divested by the first sale and that sheriff therefore had no authority to make the second sale.

**2. Estoppel ⬦68(2)—Party obtaining judgment decreeing sale without legal effect could not take different position in another suit.**

One obtaining a judgment, acquiesced in by both sides, decreeing a sheriff's sale on mortgage foreclosure to have been without legal effect, cannot take contrary position in subsequent suit to set aside later sale.

**3. Mines and minerals ⬦54½—Foreclosure sale without proper demand and notice of seizure is null and may be ignored in making new sale.**

In proceeding to foreclose mortgage on oil lease and improvements, demand and notice of seizure takes place of citation in executory proceedings, and, where both have failed, the sale is absolutely null and may be ignored by the sheriff, who may proceed with advertisement and sale after proper demand and service of notice.

**4. Appeal and error ⬦878(2)—Judgment not changed in favor of one not appealing or answering appeal.**

Where court did not sustain plea of estoppel as to alternative demand and defendants neither appealed nor answered the appeal, the judgment cannot be changed in their favor based upon the estoppel.

On Rehearing.

**5. Mines and minerals ⬦54½—Mortgage of lease covers buildings and improvements as accessories and dependencies.**

Under Act. No. 232 of 1910, authorizing lessees of oil lands to mortgage their leases together with all buildings, constructions, and improvements, buildings, constructions, and improvements become accessories and dependencies of the lease and are covered by mortgage thereof, under Civ. Code, arts. 2461, 2490, without being specially mentioned or particularly described.

**6. Mines and minerals ⬦54½—Mortgage held to cover property placed, or about to be placed, on premises for perpetual use of mortgaged lease.**

Mortgage of oil lease, including completed oil wells with equipment for operating them and all other improvements, covered property placed or about to be placed permanently on the premises and designed to perpetual use of the mortgaged lease, under Civ. Code, art. 2490.

**7. Mines and minerals ⬦105(2)—Agent held authorized to execute mortgage covering improvements on property held under lease.**

Agent given authority by oil company's board of directors to borrow money and execute contracts deemed best for development, and execute contracts and notes and secure them by mortgage, *held* authorized to give mortgage covering all improvements placed or to be placed on land leased.

**8. Mines and minerals ⬡⟹54½ — Automobile and horse and saddle held not covered by mortgage of property held under lease.**

Automobile and horse and saddle were not improvements placed or to be placed and erected on oil lands held under lease and were not covered by mortgage of the lease and improvements.

**9. Costs ⬡⟹237—Costs not put on appellee when judgment affirmed except as to minor matter.**

In suit to set aside sheriff's sale of oil lease and improvements on foreclosure of mortgage, when judgment for defendants is affirmed except as to automobile and horse and saddle, costs of appeal will not· be put on appellees.

O'Niell, C. J., dissenting in part.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by the Choate Oil Corporation against A. C. Glassell and others. From a judgment for defendants, plaintiff appeals. Affirmed in part, and decree for plaintiff in part.

Wilkinson, Lewis & Wilkinson and Thigpen, Herold & Lee, both of Shreveport, for appellant.

Hall & Bullock, of Shreveport, for appellees.

DAWKINS, J. Defendants were the holders and owners of notes of the plaintiff for a large amount, secured by mortgage upon certain oil and gas leases, and including "four completed oil wells, with all equipment for operating the same, including tanks and standard pumping rigs and all other improvements on said leases belonging to said mortgagor, whether specially described herein or not." The notes not having been paid at maturity, foreclosure proceedings were instituted. The demand and notice of seizure were properly served upon J. A. Thigpen, as the Louisiana Agent of the Choate Oil Corporation (hereinafter called the Choate Company), but because of some defect in the proceedings it was decided to make new service. Thereupon another demand and notice were issued and served upon one Albert P. Gar-

land, as attorney of record for the Choate Company. The property was advertised for sale, and Joseph Reid Gas Engine Company intervened, claiming a vendor's lien upon certain machinery and appurtenances; and on November 11, 1921, the leases, together with all oil wells, machinery, appurtenances, etc., were adjudicated to A. C. Glassell and K. E. Merrin, for $45,000, out of which, the return recites, the costs were paid and the balance "applied on writ per receipts attached." Sheriff's deed · was accordingly executed on the following day, November 12th, and recorded in the conveyance records of Caddo parish on the 17th of that month.

The Choate Company on November 26, 1921, filed suit to annul the said sale for the reason that no service of the demand to pay and notice of seizure had been made upon it, and prayed that the sheriff's deed be declared "null and without legal effect." The defendants in that suit first denied the allegations of the Choate Company, but subsequently filed an amended answer admitting the nullity, and judgment was rendered declaring the said sale "to be null and void and without legal effect." This judgment was signed December 14, 1921.

While the sheriff had noted in his return, as above shown, this sale, distribution of proceeds, etc., as a matter of fact, he had not returned the writ to the clerk's office and the property was still in the custody of his keeper. On December 1, 1921, after the filing of answers by the purchasers at the sheriff's sale admitting its nullity, another demand and notice were served upon Thigpen, the lawful agent of the Choate Company, and the same property was, on December 6th following, again advertised for sale on January 7, 1922. On the latter date, it was again bought in by Glassell et al. for $47,000, which the return recites was applied pro tanto to their claims, and sheriff's deed was again executed and recorded.

Plaintiff brought the suit covered by this appeal to annul the second sale, reciting the pertinent facts above related and seeking to have it annulled upon the following grounds, to wit:

(1) That the authority of the sheriff had "expired" or was exhausted when the first sale was made and recorded;

(2) That said sale and recordation of the deed operated as a release in fact and law of the seizure, and the sheriff was without authority to take any further proceedings, without obtaining a new order for executory process and serving a new demand to pay and notice of seizure;

(3) That said sale was not an absolute but a relative nullity, and, until set aside by judgment of court, was in full force and effect;

(4) That the sale was without legal effect because of the failure to obtain a new order of seizure and to serve a new demand and notice of seizure;

(5) That it was also null because 30 clear days had not elapsed between the date of the judgment of nullity (December 14th) and the sale (January 7th) because until annulled, the former sale had the effect of vesting title and possession in the purchasers, and prevented the sheriff from advertising the property for sale until the said judgment was signed.

(6) In the alternative, if the sale herein attacked is found to be valid, then that the mortgage foreclosed covered the leases alone, and did not include the oil wells, equipment for operating same, including tanks, gas engines, pumping rigs, and other improvements on said leases, for the reason that the resolution of plaintiff's board of directors authorizing said mortgage covered the naked leases only.

Defendant first pleaded judicial estoppel, based upon the fact that in the former suit to annul, plaintiff had alleged that the first sale was "illegal, null and void and without legal effect," that the court below had so adjudged it to be in that identical language, and plaintiff could not afterwards shift its position and claim the sale to have been only relatively null. Further, that plaintiff was judicially estopped from alleging that the said mortgage did not cover the oil wells, equipment, tanks, gas engines, pumping rigs, and other improvements on said leases, for the reason that in said former suit it had alleged:

"That said proceedings under which petitioner's title and ownership of said property was attempted to be sold by the sheriff of Caddo parish on November 11, 1921, was an executory process on certain promissory notes and a conventional mortgage securing the same covering the property described in paragraph 1 and 3 hereof (which described all of the property now claimed not to have been covered by the resolution) given by your petitioner on the 6th day of January, 1921, said mortgage being filed for record in the mortgage records of Caddo parish, La., January 7, 1921, and recorded in Book 76 of Mortgages, p. 757; made part hereof by reference."

The court below sustained the plea of estoppel as against all grounds of attack, save the alternative allegation that the resolution authorizing the mortgage did not cover the oil wells, machinery, etc., and as to which latter point it held the law and evidence to be in defendant's favor, rejecting plaintiff's demands in toto.

Opinion.

[1-3] In the first paragraph of its petition for the annulment of the first sale by the sheriff, plaintiff alleges that it "is the owner and in the actual corporal possession of the following described property," while in the present suit it is alleged and contended that as a result of said sale, both in fact and law, the present defendants were put in possession, which latter contention is relied upon as divesting the sheriff of the custody and operating as a release of the seizure of the property.

Plaintiff cannot be allowed to thus change its position at will, and to suit its requirements. What it meant to say in that case was that the proceedings leading up to the sale were so illegal, null and void that its possession had not been divested; but it certainly had the effect of emphatically charging that the pretended purchasers were not in possession. As a matter of fact, the sheriff remained in possession through his keeper at all times, until the sale on January 7, 1922, and all bills for expenses incurred during that time were approved by that officer and paid by the plaintiff in execution as the party primarily liable for costs. Besides, plaintiff obtained a judgment decreeing the said sale to have been without legal effect, which has been acquiesced in by both sides, and it is now too late for it to take a contrary position. Johnson v. Levy, 109 La. 1037, 34 South. 68; Williams v. Gilkerson-Sloss Co., 45 La. Ann. 1017, 13 South. 394; Gaudet v. Gauthreaux, 40 La. Ann. 187, 3 South. 645; Folger v. Palmer, 35 La. Ann. 743; V. S. & P. Ry. Co. v. Tibbs, 112 La. 51, 36 South. 223. Again, the demand and notice of seizure takes the place of citation in executory proceedings, and where both have failed, as in the first sale, we think the act of the sheriff in attempting to sell was absolutely null. Grant v. Walden, 6 La. 631; Saillard v. White, 14 La. 84.

Our conclusion is that the sheriff could ignore what he had done in the first attempt to sell the property, and after making proper demand and service of notice of seizure, was fully authorized to proceed with the advertisement and sale of the property, as was done in this case.

### The Alternative Demand.

[4] The lower court did not sustain the plea of estoppel as to the property claimed in the alternative demand, although the Choate Company had alleged in its first suit that the same was covered by the mortgage, but rejected it upon the merits. Defendants have neither appealed from that ruling, nor answered the appeal, and hence we can make no change in the judgment in their favor based upon estoppel. However, we are convinced that at least a part of the items covered by the alternative demand, such as the wells, casing, pumps, etc., are a part of the leases and necessary to their full operation; but since the proof in the record is not sufficient to enable us to determine whether all of those items have become immovables by destination covered by the mortgage, we think that justice can best be done by remanding the case for further evidence and adjudication upon the alternative demand. If such property had been attached to the leases and was necessary to their operation and development, they were immovables by destination and covered by the mortgage of said leases. R. C. C. 468; Scovel v. Shadyside Co., 137 La. 919, 69 South. 745, Ann. Cas. 1917B, 178; Townsend v. Payne, 42 La. Ann. 913, 8 South. 626. The argument made by counsel for plaintiff to the effect that the owner of land to which improvements have been attached may claim the same when the land is recovered, while in a case like this the owner of the lease without the fee would not have that right, is without merit. The situation is no different to any other case where the title to the immovable is or may become defeasible. If the mineral leases should be allowed to expire (and there was no agreement to the contrary), a mortgage covering either the leases or the immovables by destination would likewise come to an end, and the property would revert to the owner of the fee with full right to its owner to claim or require the removal of the improvements as provided by the Code. The power of the holder of a defeasible title is certainly no greater for the purpose of incumbering, than it would be for purposes of alienation. The difference between this case,

and those cited by plaintiff where it was held that improvements placed upon property by a lessee, reverted to the owner of the premises is that the mineral leases are a species of real property, made so by Act 232 of 1910.

For the reasons assigned, the judgment of the lower court is affirmed, except as to the alternative demand, and as to this, it is set aside, and this cause is remanded for the purpose of receiving further proof and for adjudication of the case according to law and the views herein expressed; defendants to pay the costs of this appeal and the costs pertaining to the alternative demand to await final judgment.

### On Rehearing.

ST. PAUL, J. On reconsideration of this case we now conclude that the judgment appealed from should have been affirmed in toto except in a minor particular.

[5] Act 232 of 1910, p. 393, was passed, as its preamble recites, to encourage the development of oil, gas and mineral lands, by lessees and other grantees of mineral rights; and to that end the act provided that such lessees and other grantees should have the right "to mortgage such leases or contracts, together with all buildings, constructions and improvements placed and erected on such lands or to be placed and erected thereon. * * *"

It is clear that an act intended to encourage and promote the welfare of an industry, especially a new one, ought to be interpreted as liberally as possible, so as to carry out, rather than hinder, the plain legislative intent.

But it is manifest that an oil, gas or mineral field cannot be developed by the lessee thereof without certain "buildings, constructions and improvements," necessary to reach said minerals (by drilling, boring or digging) and to extract and store or distribute the same. Hence such "buildings, constructions and improvements" become accessories and dependencies of the lease "without which it would be of no value or service"; and therefore form part of the thing alienated or mortgaged. C. C. 2461, 2490; Coguenhem v. Trosclair, 137 La. 985, 995, 69 South. 800.

And we believe that it was the legislative intent in the act aforesaid that the mortgage of the lease should carry with it the aforesaid accessories and dependencies without any special mention being made of them. For it is clear that no one would accept a mortgage on the lease, which did not include the improvements made or to be made for the development thereof; and the Legislature does not appear to have contemplated the mortgage of the lease without the improvements, or of the improvements without the lease; but only the lease "together with" the improvements. And had it intended that these accessories should be specially mentioned or particularly described in the mortgage, it would have said so, as it did in the chattel mortgage act.

### I.

[6] But in the case before us the mortgage included "four completed oil wells, with all equipments for operating the same, including tanks and standard pumping rigs, and all other improvements on said leases belonging to said mortgagor, whether specially described herein or not"; and the property herein seized and sold by the sheriff was clearly only such as had been placed, or was about to be placed, permanently on the premises, and "designed to the perpetual use" of the mortgaged lease (C. C. 2490), except one Ford roadster, and one horse and saddle.

[7] And we think the agent who executed the mortgage for plaintiff had abundant authority granted him by plaintiff's board of directors. The power given him was to borrow money and to execute "such contract or contracts as he in his judgment might see fit and deem best" for the development of the

property; and he was further authorized to execute "such contracts and notes as may be required * * * and to secure the same by a mortgage on a part or all of said properties * * * and to execute any and all other papers necessary and requisite in securing said loan. * * *"

Therefore, from whatever angle we view this mortgage, we think it was sufficient to cover all the improvements, placed or to be placed upon the land leased.

[8, 9] The Ford roadster, and horse and saddle, were not improvements "placed or to be placed and erected on the land," and were therefore not covered by the mortgage; but these are such minor matters that we will not put the costs of this appeal on the appellees on that account.

### Decree.

It is therefore ordered that the judgment appealed from be affirmed in toto, except as to the Ford roadster and horse and saddle; which are hereby declared to be the property of plaintiff. All costs to be borne by plaintiff.

O'NIELL, C. J., dissents from the interpretation of the Act 232 of 1910 and from the ruling on the scope of authority given in the power of attorney.