This case was here once before, and now comes back for final judgment. *Page 916 
See Parks et al. v. Hughes, 145 La. 221, 82 So. 202. It has been submitted on the same record.
The pleadings and issues are stated so fully in our former opinion as to require no detailed statement of them here. There remain for consideration now but two issues: (1) The plea of prematurity; and (2) are plaintiffs in the executory process holders in good faith of the bonds sued upon.
 I.
The plea of prematurity, based upon the allegation that the bonds had not yet matured, cannot be entertained. In their petition for injunction plaintiffs first attack the validity of the bonds and the good faith of the holders thereof, and only in the alternative do they plead the prematurity of the action to foreclose. (See Petition for Injunction, pars. 22 and 23.)
It is clear that an injunction taken out against an executory process is, regardless of form, in substance and effect, adefense to the plaintiff's demand; and when plaintiff in injunction attacks the validity of the claim on which the executory process was taken out, the issue presented appertains to the merits of the claim sued upon; in other words, plaintiff in injunction joins issue with plaintiff in the executory process as to the validity of the claim sought to be enforced. But after issue joined on the merits of the controversy no advantage can be taken by evidence or otherwise of the fact that the suit was prematurely commenced. Wiltz v. De St. Romes, 18 La. Ann. 187. When plaintiffs in injunction tendered first the issue of validity of the bonds sued upon, etc., they waived the plea of prematurity and could not afterwards renew it, even in the alternative. They should have pleaded in the reverse order of that which they adopted, and insisted upon a ruling upon their plea of prematurity before proceeding to the main issue. *Page 917 
 II.
On the question whether plaintiffs in executory process are holders in good faith of the bonds sued upon, the record discloses the fact that of $9,500 sued upon $6,000 were part of the Darragh bonds, and $3,500 purchased directly from the company, as follows:
===========================================================================
Samuels ..... Darragh Bonds, $2,300; Purchased Bonds, $ 500; Total, $2,800
Englehardt .. " " $2,500; " " None; " $2,500
Singleton ... " " $ 700; " " $2,900; " $3,600
Dengler ..... " " $ 100; " " None; " $ 100
Hamburger ... " " $ 100; " " $ 100; " $ 200
Brown ....... " " $ 300; " " None; " $ 300
 ------- ------- ------
Total ....... " " $6,000; " " $3,500; " $9,500
---------------------------------------------------------------------------

Of course, as to the $3,500 of bonds purchased directly from the company no question can or does arise herein.
As to the $6,000 of bonds acquired from Darragh, we held in our former opinion that these were fraudulently issued, and that the burden of proof was upon the holders thereof to show that they had been acquired in good faith. And a further examination of the record satisfies us that plaintiffs are holders in good faith.
Dengler, Hamburger, and Brown are small holders; and we are satisfied that they had the means of purchasing and did purchase in good faith their small holdings. Singleton purchased all of his $3,600 of bonds, except $700, directly from the company. Samuels is a reputable business man who had already purchased $500 of bonds directly from the company, and we see no grounds for rejecting his evidence when he swears that he bought and paid for the Darragh bonds in good faith. Mrs. Englehardt swears also that she purchased her bonds in good faith, and the evidence shows that she had a considerable bank account out of which she could have paid for them.
It is only as to the last named that the evidence leaves any doubt whatever in our minds. But after mature consideration, our *Page 918 
conclusion is that whilst the Negotiable Instrument Law (Act 64 of 1904, § 59) does provide that where the title of some former holder of a negotiable instrument is shown to be defective, theburden of proof is in the present holder to show that he acquired in good faith, nevertheless that rule must not be so narrowly construed as to impair the value of negotiable paper generally. And hence it seems to us that the holder of negotiable paper, who shows that he had the means to acquire it and swears that he did so in good faith, is not required to show by checks, receipts, and witnesses where, when, and how he acquired the paper; for any
negotiable instrument may have been obtained by some one at some time by theft or fraud or other ill practices, and if the holder of a negotiable instrument must be prepared at any time to provecircumstantially how he acquired it, then the value of such instruments is greatly impaired. When the present holder shows that he had the means of acquiring the instrument, and swears that he did so in good faith, he has made out such a prima facie case that his claim to good faith ought not be rejected on mere vague suspicion that he may not have been. We therefore think that the holders of the bonds herein sued upon have sufficiently shown that they are holders in good faith. In that connection our conclusion is that Chisolm, from whom they bought the bonds, was not their agent, but Darragh's agent; and therefore his knowledge of Darragh's fraud cannot affect them. We are satisfied that they personally knew nothing of that fraud. *Page 919 
 III.
Plaintiff complains that the mortgage herein covered only the naked realty, and that there should be excluded from the seizure any oil, gas, or minerals already severed from the soil and, as movables, not subject to mortgage.
The mortgage, in terms, covers not only the lands but also the pipe lines, oil tanks, rigs, steam boilers, etc., and "all personal property on the lands."
In Choate Oil Corporation v. Glassell, 153 La. 715, 96 So. 543, we held that the mortgage of an oil lease might include all the appurtenances proper to the operation of an oil well (see Act 232 of 1910). So that there is no force in any complaint that these were not covered by the mortgage.
As to the oil and gas already severed and stored on the premises, the record does not show whether any such were in fact seized by the sheriff. But if any such there were, they were not covered by the mortgage; and the proper course for the receivers to pursue was to rule the sheriff to surrender the same to them. That course is still open to them, and their right to resort to it is fully reserved.
 IV.
The trial judge allowed defendants in injunction $1,000 attorney's fees for dissolving this injunction. Our conclusion is that the amount allowed is too much, considering that defendants are already to receive (under the terms of the mortgage) 10 per cent. on the full amount sued for. We think the allowance for attorney's fees should be reduced to $500.
 Decree.
The judgment appealed from is therefore amended by reducing the amount allowed for attorney's fees from $1,000 to $500; and in all other respects said judgment is affirmed.
O'NIELL, C.J., concurs in the decree.
LAND, J., recused. *Page 920 
 Amended Decree.