No. 3482

Second Circuit

BANK OF WINNFIELD v. OLLA STATE BANK

(November 18, 1929. Opinion and Decree.)

R. W. Oglesby, of Winnfield, attorney for plaintiff, appellant.

Henagan & Gaharan, of Jena, attorneys for defendant, appellee.

ODOM, J. E. C. Paulette owned an oil and gas lease, known as the "Holmes Lease," covering the SW¼ of SW¼ of Section 17, Township 9 North, Range 1 East, in Grant Parish, on which he drilled two wells, both being producers. On July 1, 1927, he borrowed $13,000.00 from the Bank of Winnfield, plaintiff herein, and gave his note for said amount, secured by mortgage on said lease. This mortgage was duly inscribed in the mortgage records of Grant Parish on July 5th, following. On July 2nd, one day subsequent to the date of the mortgage and prior to the date of its inscription in the mortgage records, Paulette purchased "one standard rig" from D. J. Critchet for $1600, on which he paid $1200 cash and for the balance of the purchase price gave Critchet his note, secured by vendor's lien and chattel mortgage on the rig. The rig, when purchased, was in La Salle Parish where Critchet lived, and the chattel mortgage and the note were executed before a notary in that parish. Critchet transferred the note and chattel mortgage to the Bank of Olla, defendant herein. The chattel mortgage was sent to the recorder of mortgages in Grant Parish and there recorded on July 16th, following.

Immediately after purchasing the rig, Paulette moved it to Grant Parish and set it up on the Holmes lease, which he had previously mortgaged to the plaintiff bank, the rig being installed on the lease prior to the date on which plaintiff's mortgage was recorded.

Paulette failed to pay the plaintiff bank, whereupon it foreclosed its mortgage and caused to be seized, advertised and sold the said Holmes lease, together with all the improvements situated thereon. Several months after this foreclosure and sale, the Bank of Olla sought to foreclose its chattel mortgage via executiva on the rig and had it seized where it was then installed on the Holmes lease in Grant Parish. The plaintiff bank enjoined the foreclosure proceedings of defendant on the ground that it was then the owner of the rig, the property in controversy, having purchased it at foreclosure sale, along with the lease to which it was attached.

Defendant contended in the lower court, and contends here, that the rig in question which was purchased by Paulette and placed by him on the lease subsequent to the date of plaintiff's mortgage, never

became subject to that mortgage and was not part of the lease, and therefore, was not and could not be sold along with the lease under plaintiff's foreclosure, and that therefore, Paulette, and not the plaintiff bank, was the owner of the property at the time it attempted to foreclose its chattel mortgage. The district judge held with defendant and rejected plaintiff's demands.

Our examination of the record and a consideration of the law which we think applicable have led us to a different conclusion.

The rig in controversy was a pumping outfit which was placed on the lease after the well was completed; it was placed on the lease for its service and improvement, and became a part of it by destination. It was not on the Holmes lease at the time Paulette mortgaged it to the plaintiff bank, nor was it specifically described in the act of mortgage, nor did the mortgage specifically state that it should cover all improvements subsequently placed on the land. For these reasons, the defendant, Olla State Bank, contends—and the district judge held—that plaintiff's mortgage never became operative against it. Therefore, when the "Holmes Lease" and all the improvements thereon were sold under plaintiff's execution, the pumping rig did not go with it.

A mineral lease, under Act 232 of 1910, is a species of real property (Choate Oil Corporation vs. Glassell, 153 La. 715, 96 So. 543). The pumping rig was placed upon the lease by Paulette, the owner, to develop it, for its service and improvement. The rig was necessary to the operation and development of the lease; having been placed there for its service and improvement, it became immobilized and immovable by destination. (Civil Code, art. 468; Choate Oil Corporation vs. Glassell,

supra.) Paulette mortgaged the lease to the plaintiff bank and whether the rig was on the property at the time or was placed there later, the mortgage attached to and covered it the moment it was put there, under the precise language of the Civil Code, which reads as follows:

"Article 3310—A conventional mortgage when once established on an immovable, includes all improvements which it may afterwards receive."

New Orleans Nat. Bank vs. Raymond, 29 La. Ann. 355, 29 Am. Rep. 335; Louisiana Land & Pecan Co. vs. Gulf Lumber Co., 134 La. 784, 64 So. 713.

It has been specifically held that such mortgage covers all property immovable by destination.

Rochereau vs. Bobb, 27 La. Ann. 657;

Williamson vs. Richardson, Sheriff, et al., 31 La. Ann. 685;

Weil vs. Lapeyre et al., 38 La. Ann. 303.

An additional reason, if any be needed, for holding that plaintiff's mortgage attached to the rig is that Act 232 of 1910, page 393, specifically provides that owners of mineral leases may mortgage the same "together with all buildings, constructions and improvements placed and erected on such lands, or to be placed and erected thereon." Sec. 1. It was held in Choate Oil Corp. vs. Glassell, supra, that under this act improvements placed upon a mineral lease became part of it by destination and that a mortgage on the lease covered such accessories without any mention of them in the act and covered, not only accessories then on the lease, but those about to be placed thereon. The testimony shows that it was intended by Paulette and the plaintiff bank, when the

money was loaned, that a part of it should be used in the purchase of a pumping rig to be placed on this particular lease.

According to the recitals of the act plaintiff's mortgage covered the Holmes lease "with all wells and improvements on said described land." Our conclusion is, and we hold, that the pumping rig in controversy, though not on the lease when plaintiff's mortgage was granted, but having later been placed and attached thereto by Paulette, the owner, as an improvement, became subject to the mortgage as much so as the improvements already thereon.

The documentary evidence found in the record shows that in plaintiff's foreclosure proceedings the sheriff seized, advertised and sold to the plaintiff bank "one oil, gas and mineral lease acquired from J. L. Holmes on the SW¼ of SW¼ of Section 17, Township 9 North, Range 1 East, together with all wells and equipment on said lands."

This particular pumping rig was on the Holmes lease at that time and, while neither the seizure, advertisement nor the deed make any specific mention of it, the sale unquestionably included it and title passed to the plaintiff bank, which took immediate possession of it.

The sale made to the plaintiff bank was of the lease, together with all wells and equipment situated on the land covered by the lease, all of which property was sold confusedly together—that is, the property in controversy was sold confusedly with a mass of other things belonging to Paulette. The defendant did not intervene and demand a separate appraisement and sale of the property on which its chattel

mortgage rested. Then, what became of its rights under its chattel mortgage? They were divested, lost. The case of Baton Rouge Rice Mill, Inc., vs. Fairbanks, Morse & Co., Inc., 164 La. 789, 114 So. 633-634, is exactly in point. It was there stated by the organ of the court that— "it is the established jurisprudence in this State that, if one having a lien, privilege or mortgage on movable or immovable property, suffer the same to be sold in globo or confusedly in mass with other movable or immovable property without protecting his rights by causing such property to be separately appraised and separately sold, his lien, privilege or mortgage is lost."

(See Civil Code, art. 3228.)

It was there specifically held that a chattel mortgage held by the seller of an engine installed in a rice mill, under the chattel mortgage law, Act 198 of 1918, Sec. 4, even if prior to all other encumbrances, was lost and could not be enforced as against one holding the engine under a foreclosure of a mortgage on real property and sale thereof in mass, where the holder of the chattel mortgage permitted the chattel to be sold without a separate appraisement and sale.

The Olla State Bank, defendant here, has a similar but weaker case, because its chattel mortgage did not prime plaintiff's mortgage, it having been filed for record in Grant Parish where the rig was located on July 16th, eleven days after the inscription of plaintiff's mortgage.

Under Section 4 of Act 198 of 1918, the Chattel Mortgage Law, such mortgages do not become a lien upon the property until filed for record.

Wilson vs. Lowrie, 156 La. 1062, 101 So. 549;

Youree et al. vs. Limerick, 157 La. 39, 101 So. 864, 37 A. L. R. 396;

Gulf Finance & Securities vs. Taylor, 160 La. 945, 107 So. 705.

Plaintiff's mortgage was therefore superior in rank to that of defendant's, it having been previously recorded.

Counsel for defendant, in their elaborate brief, say that even if it be true that plaintiff's mortgage did cover the pumping rig, and even though it did prime the chattel mortgage, which had no effect in Grant Parish until filed for record, their vendor's lien was still enforceable because it existed without recordation, as has been repeatedly held.

But the vendor's lien attaches only so long as the thing remains the property of the vendee and in his possession. (Civil Code, art. 3227.) The property here in controversy remained in the possession of Paulette up to the day it was sold to the plaintiff bank and the vendor's lien attached to it up to that date. That is true, even though Paulette did attach it to the lease and make it a part thereof by destination, because the property retained its identity and could have been removed without material damage to the lease itself, and it has been specifically held that the vendor's privilege exists on movables though impressed with the fictitious character of immovables by destination.

Shelly vs. Winder, 36 La. Ann. 182;

Carlin vs. Gordy, 32 La. Ann. 1285;

Lapene vs. McCann, 28 La. Ann. 749;

Walburn-Swenson Co. vs. Darrell, 49 La. Ann. 1044, 22 So. 310;

Bergeron vs. Patin, 34 La. Ann. 534.

The defendant bank, we think, could have pursued this property under its vendor's lien at any time previous to its sale by the plaintiff bank. But the fact remains that the rig was sold to the plaintiff bank confusedly with a mass without a separate appraisement and sale. The vendor's privilege was, therefore, lost. (Civil Code, art. 3228.)

Forrey et al. vs. Strange, 158 La. 941, 105 So. 21;

Baton Rouge Rice Mill vs. Fairbanks-Morse, supra.

It, therefore, follows that when the defendant bank instituted its proceedings some time after the plaintiff bank had foreclosed on its mortgage and purchased the property, it had no mortgage or vendor's lien thereon; it had no right to seize the same and its suit must therefore fall.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be reversed; and further ordered that the preliminary restraining order granted plaintiff be perpetuated and that the seizure of the property in controversy by the defendant bank be set aside, and the said bank and sheriff of Grant Parish be permanently enjoined and prohibited from proceeding further with the sale thereof; all costs to be paid by the defendant, Olla State Bank.