196 So. 336

**TYSON et al. v. SURF OIL CO. et al.**

**No. 35673.**

April 29, 1940.

Sidney G. Myers, of Shreveport, for plaintiffs-appellants.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for defendant and appellee Surf Oil Co.

Hussey & Smith, of Shreveport, for defendant and appellee F. H. Brown, Inc.

Wilkinson, Lewis, Wilkinson & Naff, of Shreveport, for defendant and appellee Pittsburgh Steel Co.

Irion & Switzer, of Shreveport, for defendant and appellee Red Iron Drilling Co.

LAND, Justice.

(1) This is a suit to cancel an oil, gas and mineral lease affecting the North 22½ acres of the Southeast Quarter of the Northwest Quarter, less 5 acres in a square in the Northeast Corner, and less 1 acre in a square in the Northwest Corner, in Section 24, Township 23 North, Range 16 West, Caddo Parish, Louisiana, in what is known as the Rodessa Oil and Gas Field.

The grounds alleged for the cancellation of the lease are:

(a) That lessee, Surf Oil Company, abandoned the property; and

(b) In the alternative, that lessee failed to pay plaintiffs royalties allegedly due them under the terms of the mineral lease.

On February 1, 1933, Louvannia Tyson, Jeff Tyson, Emma Godfrey, Charlotte Tyson Henderson, Allene Gordon, D. D. Tyson and Lula Lear, plaintiffs herein, executed an oil and gas lease in favor of Haynes Drilling Company, Inc., for a primary term of five years, covering and affecting 105 acres of land situated in Section 24, Township 23 North, Range 16 West, Caddo Parish. (Tr., Vol. 1, p. 38.)

Under date of June 13, 1935, the lessors entered into an agreement with Haynes Production Company, Inc., by the terms of which said mineral lease and other mineral leases, comprising in all 715 acres, were unitized or pooled. (Tr., Vol. 1, p. 39 et seq.)

The unitization agreement was entered into only with reference to the right to produce gas from the 715 acres, the right to mine for and produce oil from the premises under the terms of the leases being unaffected.

By mesne assignments Surf Oil Company, Inc., succeeded to the leasehold interest of Haynes Production Company, Inc., as to the tract involved in this action, and plaintiffs seek to obtain against Surf Oil Company, Inc., a personal judgment for royalties they claim are due.

The lower court rendered a money judgment in favor of plaintiffs and against Surf Oil Company, Inc., in the amount of $4,049.34, plus interest, for royalties found due under the terms of the mineral lease,

but rejected plaintiffs' demands for the cancellation of the lease.

Plaintiffs acquiesced in the money judgment but they applied for and obtained an order of appeal from that part of the judgment rejecting their demands for a cancellation of the lease.

(2) On March 4, 1936, F. H. Brown, Inc., entered into an agreement with W. F. Lacy, then the owner of the mineral lease affecting the 16½ acres involved in this suit, by the terms of which it agreed to drill a well in search of oil or gas to the then known producing horizon in the Rodessa Field and, as consideration therefor, Lacy agreed to pay Brown the sum of $8,000 in cash, and the additional sum of $52,500 from proceeds accruing to the credit of an undivided ¼ of ⅞ths of all of the first oil, gas, distillate and other minerals produced, saved and marketed from said well. (Tr., Vol. 1, p. 192.)

A similar contract for the drilling of well No. 2 was entered into between W. F. Lacy and Red Iron Drilling Company. (Tr., Vol. 1, p. 212.)

On February 28, 1936, Pittsburgh Steel Company agreed to furnish the casing and tubing for both wells and, as consideration therefor, Lacy agreed to pay Pittsburgh Steel Company the sum of $23,000 from proceeds accruing to the credit of an undivided ¼ of ⅞ths of all of the oil, gas, distillate and other minerals produced, saved and marketed from well No. 1, and $23,000 from proceeds accruing to the credit of an equal interest in well No. 2.

After exceptions of no cause or right of action filed by F. H. Brown, Inc., Pittsburgh Steel Company and Red Iron Drilling Company had been overruled, they answered plaintiffs' original and supplemental petitions and denied that plaintiffs were entitled to cancel or rescind the mineral lease and, in the alternative, alleged a reconventional demand against plaintiffs for the value of the property placed by them on the leased premises, should the court cancel or rescind the mineral lease.

Defendants, F. H. Brown, Inc., and Red Iron Drilling Company, answered the appeal, urged their exceptions of no cause or right of action, averred that plaintiffs' demands should have been rejected and, in the alternative and only in the event the court should decree a rescission or cancellation of the lease, prayed for judgment in reconvention against plaintiffs for the value of the improvements placed by them on the premises and, further, that they be decreed the operator of the premises until they shall have received a sum equal to the value of said improvements from minerals produced and marketed from the wells drilled by them, respectively, on said premises.

Plaintiffs have appealed from that part of the judgment adverse to them and defendant, Surf Oil Company, has answered the appeal praying that the personal judgment fixing the disputed royalty be reduced to the sum of $919.20.

(3) Plaintiffs sued a number of other persons having an interest in the other land contained in the 715-acre unitization agreement but this suit as to these defendants was dismissed on exceptions for the reason that the lower court concluded that, since the unitization agreement merely made a joint lease on the 715 acres and Haynes Drilling Company had assigned all of its interest in the 16½ acres to W. F. Lacy, this had the effect of making two separate leases insofar as the lessees were concerned. However, all persons interested in the 16½ acres directly are before the court either as plaintiffs or defendants.

(4) W. F. Lacy drilled two wells on the 16½ acre tract in question but, instead of being ordinary gas wells, they produce large quantities of fluid with gas, which is separated from the gas at the well by means of a separator. This fluid is called "distillate," is almost pure gasoline, and is run to storage on the premises. The residue gas from these wells, after the separation of the distillate, contains also some gasoline content, which is recovered through a gasoline absorption plant. By assignment of date January 21, 1937, Lacy conveyed to the Surf Oil Company, Inc., this lease.

Plaintiffs allege that, beginning with the acquisition of the lease, defendant, Surf Oil Company, Inc., disposed of all gas, without extracting the gasoline therefrom, from the leased premises for one cent per thousand cubic feet to its associated companies, The Leonard Company, the Shoreline Oil Company and the La-Tex Crude Oil Purchasing and Pipeline Company, Inc., contrary to the obligations expressed and implied by the lease and unitization agreement, when the market price was four cents per thousand cubic feet for dry gas or gas from which the gasoline had been extracted.

Plaintiffs allege that the Surf Oil Company, Inc., has been engaged in the production of oil, gas and distillate; that the La-Tex Crude Oil Purchasing and Pipeline Company, Inc., has been engaged in the gathering and transporting of oil and gas through a pipe line system; that the Shoreline Oil Company has been engaged in operating a refinery and absorption plant and in the marketing of products thereof; and that defendant, Surf Oil Company, Inc., and said affiliated companies have failed and refused to account for and pay to your petitioners the royalties due under the terms of the lease.

(5) Plaintiffs allege that defendants have violated the provisions of the unitization agreement of June 13, 1935, by failing to pay, at the time and in the manner therein stipulated, the royalties therein provided.

Plaintiffs also allege that defendants discontinued the operation of the lease for more than three months after the expiration of the primary term and that the lease expired, as to the 16½ acres, by its own terms and limitations.

The evidence as produced shows that C. M. Leonard was the moving spirit of all three of defendant affiliated companies, and that he fixed the price of gas at which La-Tex Crude Oil Purchasing and Pipeline Company would pay for it. We hold therefore that, insofar as the sale price of the gas to the Shoreline Oil Company at one cent per thousand cubic feet was without the consent of the plaintiffs, the price is not binding on plaintiffs and they are entitled to recover a fair market value for the gas at the well where produced.

When the defendant, Surf Oil Company, Inc., first began producing gas from the wells on plaintiffs' land, the gas was sold to La-Tex Crude Oil Purchasing and Pipeline Company and defendants unsuccessfully attempted to secure plaintiffs' signatures to the division order because the sale price of gas or casinghead gas was fixed at one cent per thousand cubic feet. Hence the pipe line company did not pay anything for the gas so taken for the period of January to October, 1937, which is sued for in this case.

There is no direct evidence in the record to prove the market price of gas in the Rodessa Field for the period of January to October, 1937.

The gas from the wells here in question was "wet gas," or gas left after removal of the "distillate" by a separator at the well, leaving the gas still saturated with gasoline. The value of "wet gas" is to be determined by considering the value of the gas from the standpoint of fuel, plus the value of the gasoline content.

In determining the quantity of gas produced, the trial judge states in his written opinion: "Plaintiffs filed in evidence the M-2 reports made by the Surf Oil Company to the Conservation Department of Louisiana, as to the amount of gas produced for a portion of the period and also filed in evidence a statement furnished by Mr. Ahlums taken from the books of the La-Tex Corporation, and also the evidence of Mr. Ahlums, who is an employe of defendant companies, which statement coincides with the M-2 reports of the Surf Oil Company, where both are available, and,

hence, we assume that they would correspond for the remainder of the period, hence, we take this statement as correct for the basis of determining this suit, and find that from January 1, 1937, through October of the same year that 1,185,410,000 cubic feet of gas was produced from the wells on plaintiffs' lands here in contest, on which they are entitled to be paid royalty. The combined royalty interest of plaintiffs as shown by the division order executed by them for the sale of distillate is equivalent to .108582 of the whole by which we arrive at the figure of 128,735,000 cubic feet of gas. The question then arises what was the value of this royalty gas?"

In determining the value of this royalty gas, the trial judge further stated: "According to the royalty statement of the United Gas Company filed in evidence, covering the months of August to November, 1937, the net price received for the gasoline extracted at their plant was equivalent to .0146 per thousand cubic feet of gas; and according to the compilation of Mr. Davies filed in evidence, it appears that the gasoline content of this gas was approximately .44 gallons per thousand cubic feet of gas; and that the average sale price of the gasoline was *approximately* .043 per gallon, from which we deduct the 1¢ per gallon extraction charge and have the net value of the gasoline content per thousand cubic feet of gas to be .44 gallons times .033 cents per gallon, or .0146 cents per thousand cubic feet of gas. To this price we add the 2¢ per thousand for dry gas and arrive at the price of .03146 as the value of the wet gas at the well, for which plaintiff is entitled to recover."

(6) Judgment was rendered in favor of plaintiffs jointly and against Surf Oil Company, Inc., in the sum of $4,049.34, with 5% interest per annum thereon from October 26, 1938, until paid, said sum being fixed as against all defendants as the amount of rents and royalties due plaintiffs for the period January 1, 1937, until November 1, 1937, under the oil, gas and mineral lease on the 16½ acre tract, upon which are located wells known as Surf Oil Company, Inc., Tyson No. One and Tyson No. Two.

The judgment also declared the lease severable and that, in so far as it covers and applies to the lease on the 16½ acre tract, it has been divided, separated and detached from the remainder of the lease as amended.

The judgment also condemns Surf Oil Company, Inc., to pay all costs, and otherwise rejects plaintiffs' demands.

(7) Plaintiffs prayed for judgment in their favor and against defendant, Surf Oil Company, Inc., in the full sum of $9,000, for rents and royalties accrued prior to the alleged cessation of operations upon the lease, and further for judgment in the sum of $24,000, the value of the production taken from the wells after the alleged abandonment and termination of the lease, or in the alternative for royalties in the sum of $3,000 in the event that the court should hold that the lease was still in effect, when the wells were surreptitiously operated as alleged, and for further judgment in the sum of $1,500 attorneys' fees, with legal interest thereon from judicial demand until paid, and all costs of suit.

Plaintiffs also prayed for further judgment against all defendants, decreeing the oil, gas and mineral lease on the 16½ acre tract, and upon which are located the wells known as Surf Oil Company, Tyson No. One and No. Two, terminated or, in the alternative, for judgment against all defendants decreeing the cancellation and rescission of the lease.

The demands of plaintiffs to have the lease declared terminated, or cancelled and rescinded, were rejected in this judgment.

■ (8) The demand for cancellation is based upon plaintiffs' complaint that they have not received royalties upon the residue gas marketed to November 1, 1937; and counsel cites Louisiana Oil Refining Corporation v. Cozart, 163 La. 90, 111 So. 610, as authority to support his contention.

That case was one in which the plaintiff owned a tract upon which there were two producing gas wells which were leased to the defendant for the sum of $400 per year to be paid in advance. There was no question of royalties to be fixed by the amount or quantity of production, as in the case at bar, but the rental became due as rental under the ordinary lease of a building or dwelling. The soundness of that decision is not disputed but it is based upon facts totally different from those presented in this case.

The record fails to disclose that any specific demands were ever made upon the lessee, the Surf Oil Company, prior to the institution of this suit.

The demands made by plaintiffs were at all times exorbitant and of such nature that the amount of royalties due could be fixed

and determined only by the final judgment to be rendered in the case.

The defendant contends that the royalties must be fixed and determined upon the price which it received, or one cent per thousand cubic feet, and plaintiffs contend that they are entitled to royalties far in excess of those admitted, and payments were refused because the price of one cent per thousand cubic feet was not acceptable to plaintiffs, who made demands for unreasonable amounts, which defendant had a perfect right to refuse to pay and, under such circumstances, cancellation of the lease should not be decreed.

A similar question was considered by the Supreme Court in the case of Brewer v. Forest Gravel Company, 172 La. 828, at pages 832 and 833, 135 So. 372, at page 373, from which we quote the following:

"The district judge, however, did not cancel the lease, and plaintiff has asked us to amend his judgment by doing so.

"We do not think he is entitled to it. It is true that ordinarily a lessor may dissolve a lease for failure on the part of the lessee to pay the rent promptly when due. But 'the right to dissolve a lease is subject to judicial control according to circumstances.' Sieward v. Denechaud, 120 La. 720, 730, 45 So. 561, 564, citing Prude v. Morris, 38 La.Ann. [767] 769, and other authorities.

"In the present case defendant has not refused arbitrarily to pay the rent, but was in good faith in refusing to pay more than he thought was due according to the advice of his counsel. We do not think a lease should be canceled under such circum-

stances. * * * When the tenant has reasonable grounds for thinking that he does not owe all the rent claimed by the landlord, it would be a harsh rule to turn him out because he has made some error in good faith; and, as above said, courts will exercise some discretion in such cases."

■ Defendant, in this case, is represented by able counsel, under whose advice it has acted in refusing to pay the excessive royalties demanded by plaintiffs. The judgment of the lower court, which is correct, is in itself a vindication of defendant against any charge of bad faith, since the amount of royalties sued for has been greatly reduced by this judgment, after contradictory hearing by the trial judge of all the facts in the case.

■ (9) Plaintiffs' contention that the lease has terminated by its express terms, i. e., that the lessee ceased to produce oil or gas in paying quantities, after the primary term of the lease expired, is based on the fact that the M–2 reports by the Conservation Department for the months of July, August and September, 1938, show no production and contain the notation, "wells shut in entire month."

After the primary term of the lease has expired, in order to cancel the lease, there must be some evidence that the wells thereon are no longer capable of producing oil or gas in paying quantities; or that the lessee, in closing down the wells, has done so with intention of abandoning same.

The evidence does not show why the wells were temporarily shut down by the lessee. According to plaintiffs' own allegations, the lessee was surreptitiously operating the wells, through by-passing the gas around the meter, etc., thereby refuting any statement that the wells had been abandoned or had ceased to produce gas in paying quantities.

The cause for the shut-down for the time was not shown by plaintiffs. Defendants state that it was because the Shoreline Oil Company had gone out of business and had ceased to take the gas, and defendants were looking for a market for same. But whatever might have been the cause, it does not appear that it was because the wells could not be operated or that the lessee intended abandoning the property.

We do not think that plaintiffs are entitled to cancel the lease by reason of the temporary shut-down during the months stated.

(10) In this case, plaintiffs, as lessors, claim that they are entitled to the landlord's lien and right of pledge upon equipment installed upon the leased premises by the lessees for use in producing oil and gas from the land.

A writ of provisional seizure was applied for and obtained by plaintiffs and, under that writ, the following property of the lessee on the leased premises was seized: "1 Frame Tool House, 1 steel Gauge Line, 1 Ball pein hammer, 1—4" Nordsron Stop Cock, 1—4 x 8 nipple; 1 lot used valves, connections, packing material, 1 set socket wrenches, 1 pt. 13" pipe tongs; 1 complete choke; 4—200 bbl. tanks, complete; 2 High Pressure National Separators; and connections; 1 line steam pump; 1 meter house, 1 water well, 2 gas wells known as Tyson Estate (Surf Oil Co.) Nos. 1 & 2

complete with Xmas tree and connections; 2 flare lines; 1—12 x 24 Camp House; 1—1" gas line to Boiler house and Camp house; 2—1" gas Regulators 1 boiler house, 1 steam boiler and connections, 1 boiler feed pump (1 meter in meter house) pipe line dept." (Tr., p. 62.)

The trial judge rejected plaintiffs' demands for recognition of the landlord's lien and right of pledge upon such equipment, to secure payment of plaintiffs' royalty or rent, for the following reasons: "Plaintiffs claim a lessor's lien to secure the payment of the royalty here adjudged to be due. It has been held that the amount due for royalty is an amount due for rent. Roberson v. Pioneer Gas Company [173 La. 313], 137 So. [46], 49 [82 A.L.R. 1264]. The Civil Code, Article 2705, provides that the lessor has for the payment of his rent and other obligations of the lease 'a right of pledge on *the movable effects* of the lessee which are found on the property leased' and to that extent plaintiffs' lien is recognized, but in so holding we do not recognize that plaintiffs have a lien and privilege on the property provisionally seized in this suit. See Act 205 of 1938. Choate Oil Corporation v. Glassell, 153 La. 715 [96 So. 543]; Act 232 of 1910."

■ Early in the jurisprudence of this State, this court has recognized that oil and gas leases contain elements of both ordinary leases and of sales and vest only a real right or servitude to explore therefor and reduce to possession. Rives v. Gulf Refining Co. of La., 133 La. 178, 62 So. 623; Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765.

Nevertheless, this court, in Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264, held, as stated in the syllabus:

"In oil and gas lease, payment of royalty is payment of rent, and not payment of price for oil or gas rights.

"*Lease, under civil law, does not convey to lessee temporarily title to property leased, but conveys only right to use or enjoyment of property* (Rev.Civ.Code, arts. 2669, 2674)." (Italics ours.)

■ This court has also firmly established the rule that mineral leases would be construed as leases and the codal provisions applicable to ordinary leases would be applied thereto insofar as they may be; "Until the Legislature shall have passed laws specially applicable to the industry of mining, which is a new one in this state, the parties engaged in those pursuits and the courts of the state will adhere to the jurisprudence on the subject, and treat mineral contracts as leases." Spence v. Lucas, 138 La. 763, 70 So. 796, 798; Logan v. State Gravel Company, 158 La. 105, 103 So. 526; Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264; Board of Commissioners v. Pure Oil Co., 167 La. 801, 120 So. 373.

■ Under the same authorities and, as provided by Article 2705 of the Civil Code, the mineral lessor is entitled to a lien, privilege and right of pledge upon the property placed on the leased premises by the lessee.

In Choate Oil Corporation v. Glassell, 153 La. 715, 723, at pages 723 and 724, 96 So. 543, at page 545, it was said

by this court, on rehearing: "Act 232 of 1910, p. 393, was passed, as its preamble recites, to encourage the development of oil, gas and mineral lands, by lessees and other grantees of mineral rights; and to that end the act provided that such lessees and other grantees should have the right 'to mortgage such leases or contracts, *together with all buildings, constructions and improvements placed and erected on such lands* or to be placed and erected thereon. * * *'

"It is clear that an act intended to encourage and promote the welfare of an industry, especially a new one, ought to be interpreted as liberally as possible, so as to carry out, rather than hinder, the plain legislative intent.

"But it is manifest that an oil, gas or mineral field cannot be developed by the lessee thereof without certain *'buildings, constructions and improvements,'* necessary to reach said minerals (by drilling, boring or digging) and to extract and store or distribute the same. Hence such *'buildings, constructions and improvements'* become *accessories and dependencies of the lease 'without which it would be of no value or service'*; and therefore form part of the thing alienated or mortgaged. C.C. 2461, 2490; Coguenhem v. Trosclair, 137 La. 985, 995, 69 So. 800." (Italics ours.)

Plainly, the Legislature has recognized that the oil and gas lessor or grantor has a lien and privilege for the payment of his rent, in the very act relied upon as authority to the contrary by the trial judge, Act 232 of 1910 now Gen.St. §§ 4731, 4732, 4733: "4733. Privilege of lessor grantee unim-

paired.—Nothing in this act or in such mortgages as have been heretofore executed and are by this act validated, or that may be hereafter executed by virtue of this act, shall be held or construed in any manner to affect, diminish or destroy *the lien and privilege of the lessor or grantee upon such improvements and other works for the payment of rent* and the enforcement of the other stipulations *of such leases or contracts.*" Gen.St. § 4733, p. 1827. (Italics ours.)

(11) When this court declared in Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264, that "Lease, under civil law, does not convey to lessee *temporarily title to property leased,* but conveys *only right to use or enjoyment of property,*" this court must have been aware, at the same time, that it had been held in Rives v. Gulf Refining Co. of La., 133 La. 178, 62 So. 623, and in Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765, and in other cases, that oil and gas leases contain elements of both ordinary leases and of sales, and do not vest the ownership of the oil or gas itself as physical or corporeal property but only a real right or servitude to explore therefor, and reduce it to possession.

This court has consistently applied the codal provisions, whenever possible, to oil and gas leases for many years. Having declined to enact laws for the regulation of the oil industry and, particularly, having declined to adopt a Mineral Code, the Legislature has placed the stamp of approval upon the system of interpretation of oil and gas contracts which this court

has followed for so many years. Only a few situations have arisen which the lawmaker has seen fit to correct, the principal one being the want of an adequate remedy in the oil and gas lessee to protect or assert his rights, without concurrence of his lessor, as dealt with by this court in Gulf Refining Company of Louisiana v. Glassell, 186 La. 190, 171 So. 846. In that case it was held that a lessee of the usual mineral or gas and oil lease cannot, in his own right or name, institute a petitory or possessory action, as he has no real right in or servitude on the leased land.

This defect or deficiency in procedure was provided for by the passage of Act 205 of 1938. Allison v. Maroun, 193 La. 286, 190 So. 408.

▮ Act 205 of 1938, although it declares that rights created by an oil and gas lease shall be *"incorporeal immovable property,"* simply supplied a name for those characteristics which this court has declared many times were inherent in such agreements; *"incorporeal immovable property"* being merely a synonym for "incorporeal real right," or a real servitude imposed upon the land leased in favor of the lessee.

▮ In Payne et als. v. Walmsley, La.App., 185 So. 88, Act 205 of 1938 was interpreted by the Circuit Court of Appeals mainly as changing a remedy and not a substantive right. This statute, being remedial and procedural in character, was properly made retroactive, and does not infringe substantive vested rights, which accrued under the old law. In Stallings v. Stallings, 177 La. 488, at page 496, 148 So. 687, 689, it is said by the court: "Rem-

edial statutes and statutes governing procedure apply to all actions brought subsequent to their promulgation. State v. Brossette, 163 La. 1035, 113 So. 366." But the statute in this case, having been made retroactive, necessarily attaches and applies equally to past as well as to future suits.

The attack upon the constitutionality of Act 205 of 1938 made by plaintiffs in this case, on the ground that this statute was adopted long after all rights in the case had vested and accrued, since the lease contracts were executed in 1933, and the rents or royalties found to be due accrued in 1937, is without merit, since the statute, in our opinion, does not change any substantive right, but is remedial and procedural in character, and is declared in the statute itself to be retroactive.

(12) Under exceptions of no cause or right of action, defendants, F. H. Brown, Inc., and Red Iron Drilling Company, whose claims have already been referred to in this opinion, contend that the lease, as amended by the unitization agreement, was not divisible; and that plaintiffs' petition reflected no cause or right of action against these defendants, inasmuch as the plaintiffs did not allege that gas was not being produced from other lands affected by the unitization agreement.

Plaintiffs' suit alleged, first, that the Surf Oil Company tract, 16½ acres, had been severed by an assignment from the larger lease of 715 acres, of which it was a part, as well as from the remainder of the unitized leases, and, consequently, that the lease affecting the Surf Oil Company tract

alone should be rescinded; and, in the alternative, if the court should find that the lease agreement, as amended by the unitization agreement, was indivisible, or that the Surf Oil Company lease had not been severed by such assignment so as to constitute an independent lease then, and in that event, the entire agreement should be rescinded. In presenting these issues, the lessees holding the remainder of the large lease and the remainder of the unitized leases, as, well as the owners of mineral interests in other tracts affected by the amending agreement, were made parties defendant.

In answer to these contentions, plaintiffs reply:

(a) That the lease agreement by its terms is made divisible and that the trial court's finding in this regard was correct.

(b) That the position of the defendant, F. H. Brown, Inc., and others of the same class, is not different whether plaintiffs' rights would extend to the rescission of the entire lease or only to the rescission of that part in which these defendants own an interest.

The original lease of plaintiffs, lessors, to the Haynes Drilling Co., Inc., of date February 1, 1933, covers and affects S. E. ¼ of N. W. ¼, less 5 acres in a square in the N. E. Corner, and N. W. ¼ of S. E. ¼, and the North 30 acres of the South 80 acres of the S. ½ of the S. E. ¼ of Section 24, Township 23 N., Range 16 W. in Caddo Parish, containing 105 acres, which are owned by plaintiffs, lessors.

This lease contains the following provisions: "If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment, or a true copy thereof; and it is hereby agreed in the event this lease shall be assigned as to part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which said lessee or any assignee thereof shall make due payment of said rental." This lease was recorded February 7, 1933, in the Conveyance Records of Caddo Parish, La.

 It has always been held in this State that a lease contract which contains such language was thereby rendered *divisible* and that, upon assignment, *independent leases resulted*. Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264; Swope v. Holmes, 169 La. 17, 124 So. 131.

On June 13, 1935, the plaintiffs, lessors, entered into an agreement with Haynes Production Company by which the above lease and other leases from plaintiffs, lessors, comprising 715 acres, were to be treated as if owned by the parties, lessors, in indivision and developed and operated

for gas as if said leases were one lease and said tracts only one tract, leaving said leases unaffected insofar as they grant lessee the right to mine for and produce oil.

Section 4 of this unitization agreement provides: "There shall be no obligations on the part of lessee to drill wells for gas upon any particular one of the separate tracts above referred to, or upon any separate tract into which said land or any part thereof, covered by the aforesaid leases, may hereafter be divided by sale, devise or otherwise, or to furnish separate measuring devices for any person hereafter acquiring any interest in the minerals upon all or any portion of said land, who, insofar as the gas rights are concerned, shall take his interest in the same manner as is above provided for the parties lessor."

This provision in the unitization agreement does not, by any means, interfere with the assignment of the lease in this case, as in such assignment the assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned and leaves no contractual relation whatever between the parties, or obligation on the part of the assignee in favor of the assignor. Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264.

By mesne assignments, Surf Oil Company, Inc., succeeded to the leasehold interest of Haynes Production Company, Inc., and, therefore, an independent lease resulted as to the 16½ acre tract operated by the Surf Oil Company, assignee.

We find no error in the trial judge's finding that the lease agreement by its terms is made divisible.

(13) In their answers, defendants, F. H. Brown, Inc., Pittsburgh Steel Company and Red Iron Drilling Company, denied that plaintiffs were entitled to cancel or rescind the mineral lease and, in the alternative, alleged a reconventional demand against plaintiffs for the value of the property placed by them on the leased premises, should the court cancel or rescind the mineral lease.

In answers to the appeal, defendants, F. H. Brown, Inc., and Red Iron Drilling Company, urged their exceptions of no cause or right of action and, in the alternative and only in the event the court should decree a rescission or cancellation of the lease, prayed for judgment in reconvention against plaintiffs for the value of the improvements placed by them on the leased premises and, further, that they be decreed the operator of the leased premises until they shall have received a sum equal to the value of said improvements from minerals produced and marketed from the wells drilled by them, respectively, on said premises.

As the lease of the Surf Oil Company has not been declared terminated, and has not been rescinded in this case, the reconventional demands of the defendants, made in the alternative, necessarily fall and drop out of the case.

Defendant's exceptions of no cause or right of action, based upon the indivisibility of the lease, were also properly overruled by the trial judge, the lease being divisible, and having become an independent lease by assignment to the Surf Oil

Company, and all parties interested therein having been cited.

(14) The lease in this case provides that: *"Lessee shall have the right at any time to remove* all machinery and fixtures placed on said premises, *including the right to draw and remove casing."* (Italics ours.)

Plaintiffs sued for all royalties accrued and for the cancellation of the lease. Alleging that plaintiffs have good reason to believe that the lessee will remove the property, upon which they hold a lessor's lien and privilege, from the leased premises and that they may thereby be deprived of their lien and privilege, plaintiffs prayed for a writ of provisional seizure, which was issued, and under which the property and effects on the leased premises were provisionally seized.

Plaintiffs further prayed for judgment against all the defendants, recognizing and maintaining writ of provisional seizure and plaintiffs' lessor's lien and privilege upon all the property and effects located on the leased premises and that same be sold and, out of the proceeds thereof, that plaintiffs be paid by preference over all others.

In our opinion, the trial judge erred in refusing to render in plaintiffs' favor the judgment prayed for by plaintiffs.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed in all respects, except as to that part of the judgment rejecting plaintiffs' demands against Surf Oil Company, Inc., and all defendants for recognition and maintenance of writ of provisional seizure

and plaintiffs' lessor's lien and privilege, which is hereby annulled and set aside.

It is now ordered, adjudged and decreed that there be further judgment against Surf Oil Company, Inc., and all defendants herein, recognizing and maintaining the writ of provisional seizure, and plaintiffs' lessor's lien and privilege on all the property and effects, located on the leased property and herein seized, and that same be sold and, out of the proceeds of sale, that plaintiffs be paid by preference over all others, the amount of the judgment rendered in plaintiffs' favor, with interest, as decreed in the judgment appealed from.

O'NIELL, C. J., does not take part.

ROGERS, J., concurs and hands down written reasons.

FOURNET, J., concurs in the decree.

ROGERS, Justice (concurring).

I am not in accord with the view expressed in the majority opinion that Act 205 of 1938 merely changes a remedy and not a substantive right. The statute expressly *defines* and *classifies* mineral leases as *real rights.* The fact that the statute further points out the procedure by which those rights may be asserted and protected does not change their character of real rights as fixed in the act. I do not think a real remedy can exist without its correlative real right, no matter how limited in scope may be the right or the remedy. It may be that a mineral right is not a real

right in its nature, but it is one that has been made so by legislative enactment, which also gives its owner or possessor the same remedies for its enforcement as are enjoyed by the owner or possessor of other immovable property. I agree, however, with the other views expressed in the majority opinion and to that extent I concur in the opinion, and also in the decree.